[Civ. No. 15261. Second Dist., Div. One. July 18, 1946.]

MARY ELIZABETH DOTSCH, Respondent, v. ERNEST A. GRIMES, Appellant.

Henry D. Lawrence for Appellant.

No appearance for Respondent.

WHITE, J.—This is an appeal by defendant from a judgment of the Superior Court of Los Angeles County modifying an order *in re* custody of the minor child of plaintiff and defendant, which custody had formerly been granted by the Court of Common Pleas of the County of Summit, State of Ohio, to plaintiff mother ''during the regular public school term in the community in which the child then resides'' and to defendant father ''during the summer vacation period, which shall begin on the third day after the closing date of the regular public schools in the spring, and shall end on the third day before the commencing of the regular public school term in the fall.'' By her complaint the plaintiff mother sought the sole and exclusive custody of said minor, and the litigation was instituted pursuant to the provisions of section 199 of the Civil Code. To plaintiff's complaint defendant father filed his answer, and the cause proceeded to trial, following which the court ordered judgment, adopting as such judgment the aforesaid judgment rendered in the Ohio court relating to the custody of said minor child, except ''that the period of time during which Ernest A. Grimes, the father of said child, shall be entitled to his custody shall be for a period of six weeks, instead of three months, during the summer vacation period of the public schools.''

Plaintiff mother remarried and has resided at San Pedro in Los Angeles County since 1940. When in September, 1944, she obtained custody of the child in the Ohio court, she brought him to her California home, and in March, 1945, commenced this action for his exclusive custody. No brief has been filed on behalf of respondent.

The child being within this jurisdiction, the courts of this state are empowered, notwithstanding any judgment or order of the courts of a sister state, to inquire into and determine in their own behalf what are the best interests and

what will best promote the welfare of the child. ▮ This because under long-recognized authority in this state an award of custody of a minor child of divorced parents to either party in a divorce proceeding has no permanent finality, and is later subject to change and modification by the court wherein it was made. This rule is applicable not only to orders made by California courts, but to such former orders of courts in other states. (*Foster* v. *Foster,* 8 Cal.2d 719, 726 [68 P.2d 719].)

While contending that the order of the Ohio court was entitled on principles of comity to full faith and credit in the courts of this state, appellant does not seriously insist that the jurisdiction of the Superior Court of Los Angeles County to make an order modifying the Ohio order can be successfully challenged upon the ground that the latter order was res judicata and could not therefore be changed. Appellant, however, does contend that where no evidence was offered or introduced of any change in circumstances arising after the making of the Ohio order, the California court was without authority to modify the same. In support of this claim appellant relies upon *Foster* v. *Foster, supra,* wherein the court, at page 728, quotes approvingly from *Titcomb* v. *Superior Court,* 220 Cal. 34, 39 [29 P.2d 206], as follows:

"The paramount concern in awarding custody as between parents is the welfare of the child, who is not the property of his parents. If it appears that the circumstances upon which the prior order of another state is based have not changed, our courts, on principles of comity, may refuse to decree a change of custody, but the decree of the other state is never a bar to inquiry as to the best interests of the child."

It should be noted that the court uses the phrase, "*may* refuse to decree a change of custody," immediately followed by the significant language that the decree of a sister state "is never a bar to inquiry as to the best interest of the child."

We are here confronted with another case wherein the Ohio and California courts found both parents fit to have custody of the child and did award physical custody to both parents during specified periods of each calendar year. In the case of *Kelly* v. *Kelly, ante,* p. 408 [171 P.2d 95], this day decided, we had before us a similar situation so far as the fitness of both parents is concerned. In the case just cited we held that the so-called "changed circumstances" rule was never intended to nor can it impair the inherent and statutory power of the court to make such orders relative to the

custody of children "as may seem necessary or proper" and to "at any time modify or vacate the same." (Civ. Code, § 138, subd. 2.) ▮ If, as it has been repeatedly held, the welfare and best interest of the child are the paramount concern of the court, then what governs is not the rule of "changed circumstances," but what at the time of the hearing is, in the sound discretion of the court, for the child's welfare. While, as stated by this court in *Kelly* v. *Kelly, supra,* the court may not be held to have abused its discretion in refusing to modify or change the custody unless there is a showing of "changed circumstances," such a showing is not an essential prerequisite to the making of such modification if, in the exercise of its broad and sound discretion, the court, under the facts before it, determines that the best interests of the child would be conserved by modifying the previous order.

Therefore, the question before us for determination is whether, under the evidence adduced, the action of the court in modifying the previous order of custody amounted to a clear abuse of the extensive discretion vested in it.

▮ A perusal of the record before us discloses evidence given by neighbors that plaintiff mother is very much devoted to the child, a boy 8 years of age, and has not only provided him a suitable home, but proper care as well. The mother testified that when she returned the boy from his father's home in Ohio to San Pedro, California, in September, 1944, the child was "hysterical and the teacher at school requested me to keep him home until he was better"; that at nights he could not sleep; that "he cried out in his sleep, 'Mother, I don't want to go back to Ohio,' and we have to stand with him for a while to reassure him that everything will be all right and not to worry." When asked by the court why she wanted exclusive custody of the child, the mother testified, "Because he (the father) has abused the child from when he was small, he threatened to kill me and the child is so nervous and upset and the child doesn't want to go. He has deprived us of a good home, a happy home. He gambles and he borrowed money from anybody he could get money from. He never supplied the child with the proper food or proper clothes."

True, much of the foregoing testimony given by the mother was contradicted by defendant father, but it was the province

of the trial court to pass upon the intrinsic value of the evidence and determine the credibility of witnesses.

When asked, "What do you do yourself, to foster love and respect of the child toward his own father?" Fred C. Dotsch, present husband of plaintiff, testified, "I have always talked to him and Mrs. Dotsch and I have told the whole family the boy must be taught nothing but love for his father. I believe in that. He should never be taught hate or dislike for anybody, especially his own father, and especially around the house. I want him to love his father all his life, and I hope he does. I would not tolerate anything else." This witness also corroborated the testimony of his wife, mother of the child, that the latter upon his return from his father's home was "very high-strung, extremely nervous."

Another witness corroborated the testimony of the plaintiff mother that the child upon his return to San Pedro was "very high-strung and very nervous and a very sad look in his face, in fact, there was never a smile in his face; . . ."; that the child lost weight. This witness further testified as follows:

"Q. What has his physical condition been though generally, if you know, since September and his return from Ohio and up to the present time? A. You mean the condition he is in now?

"Q. His physical condition?

"A. His physical condition is much improved now since that time.

"Q. Do you know whether or not he has regained weight?

"A. Yes, I do.

"Q. Does he appear to be happy and contented in his present surroundings and environment? A. He certainly does."

A brother of plaintiff mother testified that the minor had complained to him innumerable times "about returning to Ohio."

There was also testimony as to the financial condition of defendant father, wherein it appears that he is a discharged veteran of World War II, by reason of which fact his tuition and books are paid for by governmental allotment to the University of Akron, Ohio, where the father is taking a course in electrical engineering. He too has remarried and resides with his wife in a house owned by him in the Ohio city. Defendant father testified that at the time of the trial his total

income consisted of a governmental pension award of $109.25 per month, out of which he has allotted for the support of the minor child herein $21.85, leaving his net income $87.40 per month. In that regard, the record reveals the following:

"Q. Well, do you and your wife live on $87.00 a month? A. That is right, sir.

"Q. And there is no other pension or no other income coming into your home other than the $87.00 a month? A. None whatsoever."

From the foregoing testimony we are persuaded that it cannot reasonably be held that in modifying the order of the Ohio court to provide that defendant father should have the custody of the minor child for six weeks instead of three months during the summer school vacations, the trial judge abused the sound discretion vested in him. It therefore follows that the evidence supports the findings and the findings support the judgment.

For the reasons herein stated, the judgment is affirmed.

York, P. J., and Doran, J., concurred.