[Civ. No. 15264.   Second Dist., Div. One.   Nov. 8, 1946.]

EVELYN McKEE, Respondent, v. MARK T. McKEE, Appellant.

Joseph Scott, A. H. Risse and J. Howard Ziemann for Appellant.

Jerome J. Mayo and F. Millar Cloud for Respondent.

DORAN, J.—On September 18, 1941, the respondent wife filed an action for divorce, and thereafter an answer and cross-complaint was duly filed by the appellant husband. The trial of the issues involved therein took place between October 28, 1942, and November 20, 1942, before Judge Thurmond Clarke, and resulted in an interlocutory judgment of divorce awarding the custody of the minor child, Terry Alexander McKee, then aged about two years and four months, to the appellant father, with the provision that the child should "spend three months in the summer time with the plaintiff" mother, during which period the child was not to be taken out of the State of California without consent of the court. The appellant was ordered to pay the respondent $300 per month pursuant to a property settlement agreement, and an

additional sum of $100 per month during the time the child was with the respondent. The trial court found that the father, to whom custody was granted, had "a well established, proper home in Milwaukee and also in Port Austin, Michigan," and that the father "is better able to provide for the proper raising and education of said minor child than the plaintiff." The court also found that the mother, respondent, had been guilty of indiscreet conduct with another man. From this judgment the mother instituted an appeal on March 2, 1943, but filed an abandonment of such appeal on May 21, 1943. On August 23, 1943, the mother sought a modification of the custody order, which modification was denied September 29, 1943, by Judge Stanley Mosk. Again, on September 12, 1944, Judge Mosk, at another hearing, granted the father control of the child on designated Saturdays during September when the mother otherwise had custody, and reaffirmed the original order granting custody to the father during nine months of the year.

The record further discloses that on July 7, 1944, Evelyn McKee, the mother, filed in the Circuit Court of Milwaukee County, Wisconsin, a lengthy complaint seeking exclusive custody of the child; alleging that the Superior Court of Los Angeles County possessed no jurisdiction to enter the divorce judgment of November 20, 1942, for the reason that Mrs. McKee who had instituted such action and had averred a California residence, nevertheless had then possessed no such legal residence. The Wisconsin complaint further assailed the integrity of the California judge who granted the original divorce judgment, of plaintiff's original attorneys, and of the defendant's attorney, charging collusion among them resulting in the judgment fixing custody of the child.

On May 24, 1945, the father, appellant herein, instituted in the Superior Court of Los Angeles County, an order to show cause, seeking complete custody of the child Terry, and during the hearing thereof, the mother was permitted to have issued a similar order to show cause also requesting the complete custody. The minute order of this hearing states that Judge Ruben Schmidt ordered "the custody of the child to be with the plaintiff (respondent, mother,) with the right of reasonable visitation to the defendant." The formal order, set forth in a supplement to the appellant's brief, recites that the child "is now five (5) years of age and . . . has been

kept (at Port Austin, Michigan) in a place not accessible, snowbound in winter, and subject to severe weather conditions''; that the defendant is frequently absent from home and that most of the time Terry had been under the care of aged employees; that the mother ''has been deprived of the opportunity of visiting and caring for her child,'' and that the mother ''is a fit and proper person to have the care, custody and control of said minor child.'' The present appeal is from this order changing custody from the father to the mother.

It is the appellant's contention that ''there is absolutely no evidence of any change of circumstance and it was reversible error for the court to modify the original custodial order''; further, that ''The uncontradicted evidence proves conclusively that the original custodial order protects and serves the welfare and best interests of the minor child,'' and that there was ''a clear case of abuse of judicial discretion'' in modifying the original order. On behalf of respondent there is cited the case of *Munson* v. *Munson*, 27 A.C. 676, now reported in 27 Cal.2d 659 [166 P.2d 268] wherein the court said, ''It is settled that 'An application for a modification of an award of custody is addressed to the sound legal discretion of the trial court, and its discretion will not be disturbed on appeal unless the record presents a clear case of an abuse of that discretion [Citations.]' (*Foster* v. *Foster*, (1937), 8 Cal.2d 719, 730 [68 P.2d 719].)'' This decision further reiterates the fundamental rule that the question of custody ''is to be determined solely from the standpoint of the child.''

In support of appellant's contention that a clear abuse of discretion has occurred, there were cited in oral argument the cases of *Kelly* v. *Kelly*, 75 Cal.App.2d 408 [171 P.2d 95], and *Dotsch* v. *Grimes*, 75 Cal.App.2d 418 [171 P.2d 506]. The law, as announced in these and other cases, coupled with the factual situation as presented in the record, makes it clearly apparent that no reversal should occur in the instant case, and that the custody should be left with the mother, as determined in the order herein appealed from. In the case of *Kelly* v. *Kelly*, just referred to, the court approved the statement in *Peterson* v. *Peterson*, 64 Cal.App.2d 631, 633 [149 P.2d 206] that the rule of ''changed circumstances'' governing modification of custody orders ''might well be termed a creature of judicial expediency. . . . 'How-

ever, that is not to say that the courts have no jurisdiction
to modify previous orders in the absence of such a showing
nor do the decisions wherein the (changed circumstances)
rule is enunciated "deny the power of the court to make such
modification of its orders relative to the custody of children."
(*Bogardus* v. *Bogardus,* 102 Cal.App. 503, 506 [283 P.
127].)'." Particularly applicable to the present situation
is the following language found at page 415 of the Kelly
case: "We are impressed that the 'changed circumstances'
rule, which is not statutory, is resorted to in those cases where
the court has originally determined that the child should be
in the custody of one of the parents because of the unfitness
of the other to have such custody, . . . and not to cases such
as the instant one where the court found both parents to be
fit, awarded them both custody. . . ." In the present case,
as commented on in respondent's brief, Judge Thurmond
Clarke, who made the original custody order, must have de-
cided that any "dereliction allegedly proven against respon-
dent in the original divorce action," did not militate against
granting custody to the mother during three months of the
year.

There is a similar holding in *Dotsch* v. *Grimes,* 75 Cal.App.
2d 418 [171 P.2d 506] decided the same day as the Kelly
case (July 18, 1946), where the court said: "If, as it has
been repeatedly held, the welfare and best interest of the
child are the paramount concern of the court, then what gov-
erns is not the rule of 'changed circumstances,' but what at
the time of the hearing is, in the sound discretion of the
court, for the child's welfare." In the Dotsch case it was
held that the trial judge did not abuse discretion in modifying
a custody order so as to provide that the father should have
custody for six weeks instead of three months. So in the
present case it cannot be said that the final order granting
custody to the mother for 12 months instead of three months
as originally ordered, amounts to an abuse of discretion jus-
tifying reversal, particularly in view of the age of the child
and the other circumstances which were before the court.

At the trial of the within action, both parties appeared as
witnesses and were examined and cross-examined at length. It
has been noted often in many decisions that the trial judge,
having heard the evidence and observed the witnesses, is
best qualified to pass upon and determine the issues there

presented. And this is especially true where the custody of minor children is involved. It is well settled that the judgment of the reviewing court should not be substituted for that of the trial judge. Only upon a clear showing of abuse of discretion will such judgment be disturbed on appeal. There is no such showing in the instant case. Nor does the fact that the mother had instituted in another state, an action assailing the original California divorce proceeding, and again seeking custody of the child, in any manner affect the situation, however ill advised such action may have been.

The order appealed from, granting complete custody to the mother, respondent herein, is therefore affirmed.

York, P. J., concurred.

WHITE, J.—I dissent.

I am in accord with the holding of the majority opinion that ''The judgment of reviewing courts should not be substituted for that of the trial judge except upon a clear showing of abuse of discretion,'' but in my opinion the instant proceeding presents a case wherein the court clearly abused the discretion reposed in it in cases of this character involving custody of children, wherein the best interests and welfare of the child are the paramount issues. It is not the feelings and desires of the parents that are determinative, save and except insofar as they may justly be found to affect the best interests and welfare of the minor.

While in cases such as this the trial court is clothed with a wide discretion, such discretion is not plenary and unrestricted but is limited to what may be termed the exercise of a legal discretion, which while broad and inclusive, nevertheless is a legal discretion and must be exercised in consonance with fixed legal principles.

Judicial discretion is neither capricious nor arbitrary. As was said in *Bailey* v. *Taaffe,* 29 Cal. 422, 424 ''It is not a mental discretion, to be exercised *ex gratia,* but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede the ends of substantial justice.'' The phrase ''judicial discretion'' implies the use of discriminating judgment within the bounds of reason and bridled by legal principles, the application of which will tend, in cases such as the instant one, to promote the good and welfare of the child.

In the light of what has just been said, let us proceed to a consideration of the record before us in the instant case. Therein is reflected the fact that respondent herself instituted the original action for divorce on September 18, 1941, in the Superior Court of Los Angeles County. After the cause was at issue, a trial thereof before Hon. Thurmond Clarke, Judge Presiding, resulted in a decree of divorce and the custody of the minor child of the parties being awarded to appellant herein, with the right of respondent to have the child for three summer months each year. In this proceeding the court made findings of fact which included the following:

"That it is true that during the month of May, 1941, plaintiff and cross-defendant told Charles Watt that she never wanted the baby Terry Alexander McKee to know his father.

"That it is true that during the month of May, 1941, plaintiff and cross-defendant advised Charles Watt that she was going to Peru with Max de la Fuente and take the baby, Terry Alexander McKee with them and that plaintiff and cross-defendant hoped to get her divorce soon so that she could get out of this Country.

"That it is true that in May, 1941, Max de la Fuente moved his clothes into the home of plaintiff and cross-defendant and stayed there constantly and lived there until September, 1941, occupying the room of defendant and cross-complainant.

"That it is true that plaintiff and cross-defendant was seen kissing Max de la Fuente on many occasions.

"That it is true that plaintiff and cross-defendant stated to Joan McKee that she loved Max de la Fuente and would always love him and that she hoped to marry him and to go to South America and take Terry Alexander McKee (the minor child herein) with them.

"That it is true that since the birth of Terry Alexander McKee, minor child of the parties hereto, Cynthia McKee, daughter of defendant and cross-complainant took care of him in general.

"That it is true that plaintiff and cross-defendant stated to Joan McKee that defendant and cross-complainant would never see Terry Alexander McKee again.

"That it is true that during the month of June, 1941, at the home of plaintiff and cross-defendant and defendant and cross-complainant, located at Azusa, California, the plaintiff and cross-defendant was seen in bed with one Max de la

Fuente by Julian McKee a minor child of the defendant and cross-complainant; that at said time and place said Julian McKee brought tomato juice with Lea and Perrins sauce to the said plaintiff and cross-defendant and Max de la Fuente while they were in bed; that at said time and place said Max de la Fuente was a married man.

"That it is true that during the month of June, 1941, at the house of the plaintiff and cross-defendant and defendant and cross-complainant, located at Azusa, California, the plaintiff and cross-defendant was seen in bed with Max de la Fuente by Julian McKee, minor child of the defendant and cross-complainant.

"That it is true that during the Spring of 1941, at the house of the plaintiff and cross-defendant and defendant and cross-complainant, located at Azusa, California, the plaintiff and cross-defendant was seen in bed with Max de la Fuente by Muir McKee, a minor child of the defendant and cross-complainant.

"That it is true that during the month of June, 1941, at the house of the plaintiff and cross-defendant and defendant and cross-complainant, located at Azusa, California, the plaintiff and cross-defendant was seen in bed by Charles Watt; that at said time and place the minor child of the parties thereto, to wit, Terry Alexander McKee, was in the bed with the plaintiff and cross-defendant and Max de la Fuente."

The court also found that appellant herein "has a well-established proper home in Milwaukee, Wisconsin, and also in Port Austin, Michigan, and that defendant and cross-complainant (appellant) is able properly to care for said minor child at either of these two places, and that the defendant and cross-complainant is better able to provide for the proper raising and education of said minor child than the plaintiff and cross-defendant (respondent herein)."

On August 23, 1943, respondent caused an order to show cause to issue through which she sought to have that portion of the decree awarding custody of the minor child to appellant herein modified and the custody awarded to her. After a hearing had before Hon. Stanley Mosk, Judge Presiding, respondent's request for modification of custody was denied. On September 12, 1944, respondent's motion for modification of a restraining order was denied.

On July 7, 1944, respondent herein filed an action in the

Circuit Court of Milwaukee County, Wisconsin, wherein she attacked the decree of divorce herein, denying that the Superior Court of Los Angeles County ever had jurisdiction, notwithstanding the fact that she herself instituted the original divorce proceeding here through the filing of her verified complaint, wherein, as well as in her verified first and second amended complaints, and as a witness at the trial, she insisted under oath that she was a resident of the county of Los Angeles. The question of jurisdiction was an issue and vigorously contested in the divorce trial. Appellant herein by his answer in the original divorce proceeding, denied respondent was a resident of Los Angeles County. At the trial, the court found that she was a resident of California and that appellant herein was a resident of the State of Michigan.

By her pleadings in the Wisconsin action, respondent herein bitterly attacked appellant, and with equal bitterness assailed the character, integrity and honor of the Judge of the Los Angeles County Superior Court who tried the divorce action, her original counsel, and counsel for appellant herein, charging that she was the victim of collusion, fraud and perjury.

In her Wisconsin action, respondent herein, notwithstanding her previous sworn statements in the California proceeding that she was a resident of this state and her testimony at the trial to the same effect, averred in her complaint that she ''did not have a domicile or legal residence in the state of California within the meaning of section 128 of the Civil Code'' of this state. This she excuses in her complaint filed in the Wisconsin court with the averment that when she took oath before the California court that she was a resident of that state she ''assumed that the term 'a resident' as used therein referred to the fact that she had been physically present and dwelling in the state of California for one year before the commencement of the action. . . .'' In her Wisconsin action, respondent herein alleged on information and belief that ''during the trial of said action or prior thereto, the exact date of which plaintiff does not have sufficient knowledge or information to form a belief, the defendant secretly entered into collusion with attorneys E. G. Haumesch and Lee A. Solomon for the purpose of defeating the rights of the plaintiff in said action, and plaintiff also alleges upon information and belief that during said trial or prior thereto,

the exact date of which plaintiff does not have sufficient knowledge or information to form a belief, defendant secretly entered into collusion with the trial judge, Hon. Thurmond Clarke, for the purpose of defeating the rights of the plaintiff in said action, and that as a result of the collusion thus practiced by defendant the plaintiff's rights were defeated and said Hon. Thurmond Clarke decided said action against the plaintiff and entered judgment therein in favor of the defendant in form granting the defendant a divorce and awarding the custody of the minor child of the parties to the defendant for a period of nine (9) months each year''; that because of collusion between her husband and Judge Clarke she was awarded a sum totally inadequate to finance her appeal. In her Wisconsin action, respondent herein further alleged that Judge Clarke's finding that she was a resident of California was occasioned by the fact that ''defendant (appellant herein) subjected Hon. Thurmond Clarke, the trial judge, to his domination and control and after having secured such domination and control the defendant prevailed upon said Hon. Thurmond Clarke as trial judge and caused him to make'' the aforesaid finding.

In her Wisconsin action, respondent herein also alleged that appellant's attorney ''caused said action to be assigned for trial before'' Judge Clarke who had ''secured his appointment as a Judge to the bench of said county through the efforts'' of appellant's counsel, who it is alleged ''is a person of much political influence in the County of Los Angeles.'' Respondent herein also alleged ''that during the trial of said action, Honorable Thurmond Clarke frequently conferred concerning said case'' with the son of her husband's counsel who is also a judge of the Superior Court of Los Angeles County.

The proceedings which gave rise to this appeal were instituted by appellant on May 24, 1945, when he caused to be issued an order to show cause why he should not have complete custody of the minor child. In the order from which this appeal was taken, the court made findings as set forth in the majority opinion. Upon said findings, the court made the order as also set forth in the majority opinion, granting complete custody of the minor child to respondent herein with the right only of ''reasonable visitation to the defendant.''

During the hearing which resulted in the last-mentioned

order, respondent herein was permitted to file an order to show cause why she should not be granted "full custody of her son, Terry Alexander McKee, subject to the right of reasonable visitation by the defendant. . . ." The Wisconsin case was pending at the time of the hearing which occasioned this appeal. And it is apparent from the record that the Wisconsin case was dismissed only after considerable urging on the part of the trial judge herein. Respondent at first evaded the court's request for a direct answer, and the court permitted a recess so that she might consult with her attorney. After the recess, in answer to the court's question, "Are you going to continue your litigation in Wisconsin in view of the fact that this is the court that originally had the jurisdiction and still has the jurisdiction over the custody of that child?," coupled with the question by her own counsel as to whether she would . . . refrain from asking the Wisconsin court in any ways to change or modify any of the decrees of the California courts in regard to that baby, either the custody or the possession or the support or anything else having to do with that child?," the respondent answered, "Well, I don't quite—— but I think—— yes." Again respondent stated, "I answer that I will comply with any orders that you make concerning the custody of the baby, but I feel that I have my day in court in Wisconsin." Subsequently, toward the termination of the hearing, the court asked respondent, "Are you planning to dismiss that action (in Wisconsin) irrespective of what decision I make here, Mrs. McKee?," to which respondent answered, "Your Honor, I believe you will make a decision for me."

To the interrogatories of the court, "irrespective of what decision I make here," and "You are going to dismiss your Wisconsin suit?," respondent finally answered, "I will, Your Honor."

This attempt at bargaining for a dismissal of the Wisconsin lawsuit, when considered in the light of the sworn testimony aforesaid as to residence, disregard of the jurisdiction of the California courts, assault upon the integrity of a judge thereof, and the evidence relied upon to support the order, in my opinion, justifies a reversal.

The only evidence before the court upon which findings are based is with reference to the accessibility of the appel-

lant's home in Michigan, the inclemency of winter weather at Port Austin, Michigan, the claimed absence of appellant from the home from Monday to Friday each week, and the assertion that the minor is under the care of "elderly people," a man and wife of the age of 50 years and a cousin of appellant's first wife who is aged 60.

Without going into the conflict in the evidence, suffice it to say that it is noteworthy that there is no testimony of any change in the fitness of appellant to care for his son, while with reference to the health and well-being of the child I quote the statement of the trial judge in that regard as follows:

"That was gone into also, Mr. Scott, no question over the health of the child at the present time; no serious question during any of the time that it has been in his (appellant's) custody." With reference to educational facilities, while there is testimony that the nearest high school is 16 miles away, the minor child is only 5 years of age and is now attending kindergarten. The evidence is clear and uncontradicted that there is a "very good" elementary school within a mile of the home of appellant in which the child was being cared for, and that there is adequate transportation to take the child to school from his home and to return him thereto.

With reference to respondent's complaint that the minor child should have children of his own age to play with, the record herein shows without contradiction that some of the minor child's youthful relatives, 17 in number, visit him and play with him, and for periods of time reside with him; and also, that the boys and girls of his Sunday School class come to his house for parties and he goes to their homes for parties.

With reference to respondent mother's ability to furnish a home for the child, the record reflects that she has none. Her Milwaukee apartment is not available, first, because she has sublet it, and secondly, it is to be noted that the original custody order and the order modifying custody (from which this appeal was taken) both command that respondent is to keep minor child in California during the periods of time she has custody. The only evidence of any place in California to which respondent can take the minor child is a house owned by a friend of hers "across the Golden Gate Bridge"; which house has four rooms. However, it already houses two adults and one child, to wit, respondent's friend and child, and respondent's stepdaughter. Were respondent to take up resi-

dence there with the minor child here involved, there would be three adult women and two children living in a four-room house. The record does not show that respondent has any other place in California, or in any other locality, to which she could take the minor child.

In the light of the foregoing, where, I ask, is there any evidence, substantial or otherwise, to support a finding that the best interests and welfare of the minor requires a change of custody such as was ordered herein? So far as the evidence goes, there is not one iota to indicate that the child did not have the best of care from his father.

All presumptions are in favor of the reasonableness of the original decree entered in this cause, and the burden was cast upon respondent herein to prove that new facts or circumstances had intervened, affecting the welfare of the child, before a modification of the original order in re custody would be justified (*Johnson* v. *Johnson,* 72 Cal.App.2d 721, 723 [165 P.2d 552]). In a proceeding to modify an order for custody the court proceeds on new facts considered in connection with those formerly established (*Crater* v. *Crater,* 135 Cal. 633, 634 [67 P. 1049]). It is not the whims and caprices of the parties to a divorce action that is the controlling force in directing the custody of minor children, but the good and welfare of the child. Because of the presumptions attached to the original order vesting custody in appellant, he cannot be deprived of such custody unless it be shown that he is so unfit, or that other circumstances have intervened which reasonably indicate that the child's welfare would be in danger unless an order was made for change of custody, and it must further be shown by clear and convincing evidence that the child's best interests and welfare will be directly enhanced or promoted by the change (*Johnson* v. *Johnson, supra,* p. 909). Were the rule otherwise, it would inevitably lead to the child's life being constantly unsettled and disturbed by recurring changes of his custody, to say nothing of the foundation it would lay for interminable and vexatious litigation. The case at bar is utterly barren of testimony showing the presence of any fact or circumstance that was hidden from or undisclosed to the trial judge on the occasion when the original order was made. (*Munson* v. *Munson,* 27 Cal. 2d 659, 666 [166 P.2d 268].)

What has here been said does no violence to the rule announced in *Kelly* v. *Kelly,* 75 Cal.App.2d 408 [171 P.2d 95];

*Dotsch* v. *Grimes,* 75 Cal.App.2d 418 [171 P.2d 506] and other cases cited in the majority opinion, all of which hold that, in the final analysis, while a showing of ''changed circumstances'' is not an essential prerequisite to the making of a modification order *in re* custody of a minor child, the legal discretion vested in the court must be exercised upon evidence from which it appears that the best interests and welfare of the child would be conserved by any action taken, either denying or granting a change of custody. In other words, while the trial judge is clothed with a wide discretion, that discretion is, as heretofore noted, not unbridled but is limited by the rules of law herein enunciated.

Under the facts present in the instant proceeding and the law applicable thereto, I am persuaded that the trial court abused its discretion in modifying the original order in the absence of any ''changed conditions''; appellant's unfitness, or that the best interests and welfare of the child would be enhanced or promoted.

The order should therefore be reversed.

A petition for a rehearing was denied November 22, 1946. White, J., voted for a rehearing.

Appellant's petition for a hearing by the Supreme Court was denied December 23, 1946. Carter, J., voted for a hearing.