134 Cal.App.2d 479 (1955)
In re JANE POPO GI, a Minor. COUNTY OF ALAMEDA, Appellant,
v.
COUNTY OF CONTRA COSTA, Respondent.
Civ. No. 16568. 
California Court of Appeals. First Dist., Div. Two. 
July 21, 1955.
 J. F. Coakley, District Attorney (Alameda), R. Robert Hunter, Chief Assistant District Attorney, and William S. Coit, Deputy District Attorney, for Appellant.
 Francis W. Collins, District Attorney (Contra Costa), and Douglas M. Quinlan, Deputy District Attorney, for Respondent.
 KAUFMAN, J.
 This is an appeal by Alameda County from an order made by the judge of the juvenile court of the county of Contra Costa in accordance with section 880 of the Welfare and Institutions Code, transferring the case of Jane Popo Gi, a minor, to appellant county on the ground that she was a resident thereof. Such an order is made appealable by section 885 of the Welfare and Institutions Code.
 The parties agree that the only point in issue is whether or not Jane Popo Gi is a legal resident of Alameda County.
 Jane Popo Gi was born in Pago Pago, Samoa in 1940. Her parents who were also born in American Samoa, and were divorced in Pago Pago in 1945 by a decree which gave custody of Jane to the mother. Her father remarried the same year in Samoa. In 1948 while he and his present wife were living in Honolulu, T. H., Jane's mother gave physical custody of the child to the father in Honolulu where she remained with him for about two years. The family then moved to California where they have lived since that time. They made their home in Richmond, county of Contra Costa, from 1951 until September 15, 1954, at which time Jane's father moved the family to Oakland with the intention of establishing residence there. Mr. Gi is presently stationed at Treasure Island with the United States Navy. *481
 Jane's mother has always resided in Samoa, her present address being Fagaitua, Samoa-American Tuituila.
 On August 18, 1954, less than a month before the removal of the family to Oakland, a petition was filed in the juvenile court of Contra Costa County alleging that Jane Gi came within the provisions of section 700, subdivision (k) (in danger of leading an immoral life) of the Welfare and Institutions Code. A hearing was held on October 4, 1954, and the allegations of the petition were found to be true. The judge further found that on the date of the hearing Jane was a resident of Alameda County because her father was a resident of that county. The order declared the minor to be a ward of the juvenile court of Contra Costa County and ordered the case transferred to the county of Alameda. Appellant requested a transcript of the testimony on which the transfer order was based, but was informed by Contra Costa County that transcripts were not made of juvenile court hearings, and that the basis of the order was the fact that the father was the only parent of the child within the continental United States and that he had actual custody of the child since 1948. The transfer order recited that "to this order of transfer is attached a copy of said original petition, together with a summary of all the facts in the possession of this Court, or of the Probation Officer of this County, covering the history of said alleged minor." The order further stated that "said minor ... is the daughter of Faaloua Petelo Gi who resides at 1109 Poplar Street, Oakland, California. Said minor is therefore a resident of Alameda County." Respondent apparently concedes that legal custody of the minor was given to the mother by the divorce decree. The probation report attached to the transfer order shows that the mother in Samoa still retains custody of the child under the provisions of that decree.
 Appellant contends that application of the statutory law to the facts of this case compels a finding that the legal residence of the minor is that of the mother in Samoa, and that the removal of the ward to Alameda County and the change of her father's residence thereto cannot affect her legal residence. [1] Respondent argues that the legal fiction that a minor child who has been awarded to the custody of the mother takes the residence of the mother should not control, for if that were true the juvenile court would not have jurisdiction of such a child although it lived within the boundaries *482 of this state. This is not true, however, as under section 721, Welfare and Institutions Code, any county in the state in which the child is physically present has jurisdiction of such child if its case falls within any of the provisions of sections 700 and 701 of that Code. The question here, rather, is whether the minor herein had such residence in Alameda County as is required to support the order of transfer to that county.
 Respondent's contention that the decision by Contra Costa County is final and may not be questioned by Alameda County is not valid. County of Los Angeles v. Superior Court, 128 Cal.App. 522 [18 P.2d 112], is cited in support of that proposition. That case simply held that a transfer order similar to that in the present case was not subject to collateral attack. In the cited case the Superior Court of Los Angeles County adjudged the child to be a resident of Alameda County. The Superior Court of Alameda County then heard the matter, adjudged the child to be a resident of Los Angeles County, and ordered the child transferred back. Los Angeles County brought the matter up by mandamus to compel Alameda County to comply with the first order of transfer. No appeal was taken by either county from either transfer order. The court therein did not determine that such an order was nonappealable at that time (1933) but stated that it was not necessary to pass on that question. [2] That such an order is now appealable cannot be questioned for the Legislature in 1943 made it appealable by either the county in which the court determining residence is situated or the county to which the minor is ordered transferred. (Welf. & Inst. Code, 885.) It is therefore clear that such order is subject to a direct attack against the finding of residence of the child in the county to which the transfer is ordered.
 [3] While Government Code, section 244, subdivision (d), sets forth the general rule that residence of the father during his life determines the residence of the unmarried minor, the method of determining the residence of the child of separated parents is set forth in detail in section 17.1 of the Welfare and Institutions Code. Therefore any proceedings arising under that code are governed by those specific provisions, for section 17.1 states that "Unless otherwise provided under the provisions of this code, the residence of a minor person shall be determined by the following rules:" Subdivision (a) of that section provides that "The residence of the father determines that of the child during the lifetime of the father, *483 unless the father has abandoned the child, has been legally deprived of his custody, or is in fact living separate and apart from the mother of the child; in the latter case the residence of the child is determined by the residence of the parent who has his custody."
 In the case herein the father unquestionably had the physical custody of the child, for the mother who held legal custody had permitted the child to live with the father since 1948. Prior to 1953, the court would certainly have been free to interpret the statute so as to permit a transfer order to be based on the physical custody alone.
 [4] However, in 1953, the Legislature removed all doubt as to the meaning to be given the word "custody" in subdivision (a), for subdivision (d) was then added which reads as follows:
 "Wherever in this section it is provided that the residence of a child is determined by the residence of the person who has his custody, 'custody' means the legal right to custody of the child unless that right is held jointly by two or more persons, in which case 'custody' means the physical custody of the child by one of the persons sharing the right to his custody."
 Therefore, in the case of divorced parents, the residence of the person to whom the custody of the child has been awarded apparently must control the legal residence of the child until such order is changed by the court making the decree, or until another court which has jurisdiction has determined that a change in custody is necessary for the best interests of the child. While the first legal custody order remains unaffected by a later decree of a court of competent jurisdiction, the child's residence must follow that of the parent entitled to custody, regardless of where the child may be living. (Titcomb v. Superior Court, 220 Cal. 34 [29 P.2d 206]; Harlan v. Industrial Acc. Com., 194 Cal. 352, 359 [228 P. 654]; In re Casella's Guardianship, 133 Cal.App. 80, 81 [23 P.2d 782].) Respondent cites Currin v. Currin, 125 Cal.App.2d 644, 654 [271 P.2d 61], to the effect that under the provisions of subdivisions (a) and (b) of section 17.1 of the Welfare and Institutions Code after separation of the parents the child takes the domicile of the parent with whom it lives. That was a divorce action, hence the determination there was of the meaning of custody prior to any legal custody decree. Furthermore the court was concerned with a case which arose in 1952, prior to the enactment *484 of subdivision (d) of section 17.1, Welfare and Institutions Code. Appellant also cites a footnote in Sampsell v. Superior Court, 32 Cal.2d 763, 774 [197 P.2d 739], to the effect that after separation of the parents the child takes the domicile of the parent with whom it lives, but this case was decided in 1948, long before the enactment of subdivision (d).
 [5] Section 880 of the Welfare and Institutions Code provides that whenever a petition is filed in a county other than the minor's residence or whenever subsequent to the filing of such a petition, the residence of such person is changed to another county the case may be transferred to the juvenile court of the county wherein such person then resides "after the court has made a finding of the facts upon which it has exercised its jurisdiction over such person and has adjudged such person to be a ward of the juvenile court, and the juvenile court of the county wherein such person then resides shall take jurisdiction of the case upon the filing with it of such finding of the facts and order adjudging such person to be a ward of the court and of an order transferring the case."
 The Contra Costa Superior Court in its findings stated that the residence of the father was Alameda County and that therefore the child was a resident of said county. However, since the only evidence as to the legal custody of the child is that it is still held by the mother, this fact compels a finding that under section 17.1 of the Welfare and Institutions Code, the residence of the child is that of the mother and not Alameda County. Thus the order of transfer from Contra Costa to Alameda County is unsupported and the county of Contra Costa under section 880 of the Welfare and Institutions Code should have retained jurisdiction of this case.
 It is true that the custody decrees of other states and countries are not entitled to full faith and credit in this state. (Foster v. Foster, 8 Cal.2d 719 [68 P.2d 719].) However such decrees are generally enforced as a matter of comity. (See In re Memmi, 80 Cal.App.2d 295, 299 [181 P.2d 885].) The courts of this state may, of course, inquire into and determine for themselves what are the best interests of the child and what may best promote its welfare. The court may in its discretion disregard the foreign decree. (Dotsch v. Grimes, 75 Cal.App.2d 418 [171 P.2d 506].) Here, however, section 17.1 requires the legal custody order to be followed. Undoubtedly the Superior Court of Contra Costa County would have jurisdiction to change the custody of the child from the mother to the father if it were to the child's best interest *485 on application duly made by the father, and in such case the child's residence would follow that of the father under the statute. But this the court did not do.
 In view of the foregoing we conclude that the order appealed from does not find support in the record before us.
 Order reversed.
 Nourse, P. J., and Dooling, J., concurred.