## LEONARD WENTZ v. GUARANTEED SAND & GRAVEL COMPANY.[1]

July 14, 1939.

No. 32,039.

[1]Reported in 287 N. W. 113.

612

*Arthur LeSueur* and *Josiah A. Baker,* for appellant.

*Flor & Reim,* for respondent.

PETERSON, JUSTICE.

This action was brought to recover the balance due to plaintiff's intestate for services rendered less the amount of certain unpaid merchandise. Plaintiff had a verdict, and defendant appeals from an order denying its motion in the alternative for judgment *non obstante* or a new trial.

Plaintiff's claim is that the deceased was the secretary of defendant and was employed as its general manager, for which he was to receive a salary of $2,700 per year during the years 1932 to 1935, inclusive, that the salary was not paid in full, and that defendant withheld therefrom and placed to deceased's credit on its books $339.98 in 1932, $1,269.25 in 1933, $1,614 in 1934, and $1,194 in 1935, a total of $4,417.23. Deceased had purchased coal from defendant for which he was charged $349.30, leaving a net balance of $4,067.93 due him, which is the amount of the verdict.

Defendant, without conceding that the foregoing amounts were due and owing to decedent, contended that in any event he was overpaid by the receipt of $2,700 on December 27, 1930, and $2,250 in 1937 to which he was not entitled and that he is liable on a certain promissory note in the sum of $4,548.91 signed by deceased and one Keene. He and the deceased were the principal stockholders of the defendant.

Plaintiff's evidence consisted of the testimony of Keene and the company's bookkeeper and its books and records. Keene's testimony was to the effect that he and the deceased were the principal stockholders, that his wife held one share of stock to qualify her as a director, and that deceased was to have a salary of $200 per month during 1928 and 1929 and a little later $225 per month. His testimony on other points will be referred to later in connection with the matters to which it relates.

Defendant's books and copies of state and federal income tax returns were identified and explained by the bookkeeper. The books showed that deceased was to receive a salary of $2,700 during the years 1932-1935, that there was unpaid salary due to him for those years as stated in the sum of $4,417.23, that he was charged with coal in the amount of $349.30, and that the amount due from defendant to the deceased was $4,067.93. The copies of the income tax statements showed the salary to be in the amount and paid in part as stated.

The books showed that on December 27, 1930, deceased by a check signed by himself and Keene withdrew $2,700 to which he claimed he was entitled for the years 1928, 1929, and 1930 to equalize his and Keene's salaries. The bookkeeper explained that, although Keene agreed to the disbursement and signed the check, the deceased paid the amount back to the defendant upon Keene's demand. There is no evidence to dispute this fact. This transaction took place at least two years before the period here involved commenced.

The $2,250 which defendant claims was paid on back salary was received by the deceased in 1937. The books show that deceased was to receive as a salary in 1936 the sum of $4,050, of which $1,800 was paid at the rate of $150 per month during 1936 and the

$2,250 in a lump sum in February, 1937. Keene was to receive $5,400, of which he received $1,800 at $150 per month during the year and $3,600 in a lump sum at the same time the $2,250 was paid to deceased. The book entries relative to these items were made by an auditor who was employed every year to audit the books, make such corrections and entries therein as were necessary to show the true condition of the company's business, and to prepare the income tax statements, which were signed by both Keene and the deceased. The income tax statements verified by both of them conformed to the book entries. The check for the $2,250 was signed by both Keene and the deceased.

Although Keene was a witness, he did not directly dispute any of the facts stated. He claimed, however, that the $3,600 paid to him was for back salary due to him. He made no such claim with respect to the $2,250 paid to the deceased. The books showed that there was no back salary due to Keene. His statement, obviously untrue and contrary to the company's books and records, does not in any way impeach plaintiff's claim that the $2,250 was paid to deceased on account of 1936 salary.

The note signed by Keene and the deceased was executed in January, 1931, and was payable to the company. It was not referred to in the answer. The bookkeeper was asked on cross-examination if it included the $2,700 which deceased repaid to defendant. She stated the records showed the note included $2,700 salary, but it was not shown whose salary or any other particulars. She testified that the books did not show to what $2,700 salary the note referred. Nor was it shown that the note was unpaid.

Defendant did not offer any evidence in defense. The case was submitted on plaintiff's evidence. There are many assignments of error, some of which are not discussed. Defendant contends: (1) That the court erred in receiving its books and records in evidence; (2) that the evidence shows that the deceased was overpaid; and (3) that the presiding judge made certain prejudicial and disparaging remarks concerning defendant's counsel on account of which a new trial should be granted.

■ The argument against the admission of defendant's books of account is that the books were not only not properly authenticated, but the evidence showed that the entries were largely hearsay and that the bookkeeper kept the books under the direction of the deceased, who often told her what entries to make. The entries relative to the $2,250 paid on account of the 1936 salary were made by the auditor who was employed by the company and authorized to do that very thing, if necessary. No attempt was made to impeach or contradict the books. The evidence showed without dispute that the books were those regularly kept by defendant in its business. That was all that was required. Where a party offers his own books to prove his claim against a third party, the books must be authenticated under the shopbook rule. 2 Dunnell, Minn. Dig. (2 ed. & Supps.) § 3345. The authentication required under the shopbook rule is not necessary when a party's books are offered in evidence against him. They are admissible as admissions. The books and records of a corporation the same as those of an individual may always be received in evidence against it as admissions. Lindeke v. Scott County Co-op. Co. 126 Minn. 464, 148 N. W. 459; Meyers v. Barrett & Zimmerman, Inc. 196 Minn. 276, 264 N. W. 769; 20 Am. Jur., Evidence, § 977, note 8, and § 1053, p. 899, note 5.

■ The copies of the income tax returns were admissible also as admissions of the fact therein stated. Kregel v. Cirkler, 158 Minn. 175, 198 N. W. 664.

■ The record does not show that the deceased was overpaid. The $2,700 item was at least two years prior to the accrual of any part of the unpaid salary here involved. There was absolutely no evidence to show that the salary later withheld was to apply on this item or had anything to do with it. It is clear that the $2,700 was not paid in advance in anticipated withholding of the deceased's salary. But all else aside, the record is conclusive that this sum was repaid to the defendant by the deceased. Defendant was not entitled to charge him with it.

An additional fact should be mentioned in connection with defendant's claim that the $2,250 paid on account of 1936 salary was to apply on back salary. Late in 1935 the deceased and Keene as

the chief stockholders of the company entered into an agreement that each was to withdraw $150 salary per month during the year, and if either withdrew more than the stipulated sum an equal amount was to be paid to the other. Each withdrew only $150 per month. The $2,250 paid to the deceased at the end of the year and the $3,600 paid to Keene were pursuant to corporate action, appropriate entries of which were made by the auditor. Both Keene and the deceased participated in the transaction and signed the checks. There is nothing to show that the payment to the deceased was for anything but salary for the year 1936. The evidence does not show for what the note of January, 1931, was given or that it was still unpaid. The note throws no light on the issues of this case. Since it was not alleged as a counterclaim or set-off, decision here is without prejudice to such action with respect thereto as defendant may see fit to take.

The disparaging remarks concerning defendant's counsel were without prejudice since the verdict was right as a matter of law. Plaintiff's showing was not contradicted or impeached. All the evidence in the case sustained plaintiff's claims. There was no issue of fact for the jury, and, if the verdict had been in favor of defendant, plaintiff would have been entitled to judgment *non obstante*. In that view of the evidence we think that we ought not to set forth in full the incident between court and counsel. It is good practice for trial judges to be guarded in their remarks and not to say anything which can be construed as disparaging counsel.

Affirmed.

MR. JUSTICE HILTON, being incapacitated by illness, took no part.