[Civ. Nos. 25115, 25340, 24688. Second Dist., Div. Two.
Nov. 24, 1961.]

RUTH B. ROSENTHAL, Plaintiff and Respondent, v.
JEROME B. ROSENTHAL, Defendant and Appellant.

(Three Cases.)

Dorothy K. Davis and Leonard Horwin for Defendant and Appellant.

Crowley & Rhoden and Horace A. Ruderman for Plaintiff and Respondent.

ASHBURN, J—Three appeals are presented concurrently in this divorce action. Since March 1959, the parties have engaged in spirited litigation which, so far as the record discloses and as was conceded upon oral argument, has not yet eventuated in an interlocutory judgment. Appeal No. 25115 challenges an allowance of additional attorney fees of $17,000 and $587.95 costs made on March 21, 1960. No. 25340 is an appeal from an order of September 12, 1960, modifying a former order of June 5, 1959, to require payment by defendant to plaintiff of additional support money in the sum of $75 a week. No. 24688 assails an order of October 30, 1959, directing a trustee to pay certain sums of money out of a sum of $1,200 previously deposited with him in trust pursuant to stipulation. There have been three previous appeals by defendant from orders made in this cause, two applications in the District Court of Appeal for prohibition and one for mandamus, all of which special writs were denied.

We preface our discussion of these appeals with a quotation of Mr. Justice Vallée's remarks in *Overton* v. *Vita-Food Corp.*, 94 Cal.App.2d 367, 370 [210 P.2d 757] : "With rhythmic regularity it is necessary for us to say that where the findings are attacked for insufficiency of the evidence, our power begins and ends with a determination as to whether there is *any* substantial evidence to support them; that we have no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom. No one seems to listen."

APPEAL No. 25115.

Most of appellant's arguments upon this appeal may be disposed of by reference to the foregoing quotation and the fact that they invite a reevaluation of the evidence by a court of review. ██ We reiterate certain principles that we stated in *Davis* v. *Lucas*, 180 Cal.App.2d 407, 409 [4 Cal.Rptr. 479] : ''The appellate court starts with the presumption that the evidence sustains each finding of fact [citations], and the burden rests upon appellant 'to demonstrate that there is no substantial evidence to support the challenged findings.' [Citations.] ██ To this end appellant must set forth in his brief all material evidence upon the point, not merely his own proofs [citations] ; if this is not done the point is deemed waived. . . . [██ '[A] claim of insufficiency of the evidence to justify findings, consisting of mere assertion without a fair statement of the evidence, is entitled to no consideration, when it is apparent, as it is here, that a substantial amount of evidence was received on behalf of the respondents.' [Citation.] In the circumstances we are entitled to accept the statements of respondent's brief as to the evidence upon the subject. . . . We do not make an independent search of the record to uncover error.''

On June 5, 1959, an order was made directing defendant to pay to plaintiff $75 a week for her support, also the sum of $3,500 ''on account as attorney's fees.'' On August 31, 1959, plaintiff gave notice of motion to be made on September 4, 1959, for an order ''granting Plaintiff further and additional attorney's fees on account.'' The stated grounds were ''that defendant Jerome B. Rosenthal has by his harrassment, delay and efforts to thwart the process of this Court caused an undue and uncontemplated amount of effort and work upon the part of Plaintiff and her attorneys, and upon the further grounds that this Court ordered and directed Defendant to pay the reasonable cost of any necessary audit required by Plaintiff, and that Defendant has failed and refused Plaintiff access to the books, files and records of the community herein and of Jerome B. Rosenthal, individually and has prevented Plaintiff from proceeding with her audit as directed by this Court.'' The motion was to be based on the notice, the pleadings, records and files, the declaration of Horace A. Ruderman (one of plaintiff's attorneys) and oral and documentary evidence to be presented upon the hearing. The Ruderman declaration set forth with some particularity ''extraordinary and uncontemplated proceedings and efforts . . . necessitated by

reason of the actions and demeanor of defendant in this action.'' It also declared that defendant had refused to give plaintiff's auditor or attorney access to his books and records and that ''Plaintiff will be required to prepare complete and exhaustive surveys of the community situation to determine whether or not further steps, including the possibility of a receiver might not be required in the instant matter.'' The hearing was not reached until February 23, 1960, and was not concluded until March 21, 1960.

I. Appellant's first point is that the court erred in receiving evidence of services rendered by plaintiff's attorneys after the date of the notice of motion, and in refusing to strike the same. As the motion sought merely an additional allowance on account, we see no error in the court's ruling. Section 137.3, Civil Code, provides: ''Attorney's fees and costs within the provisions of this section may be awarded for legal services rendered or costs of action incurred prior, as well as subsequent, to any application or order of court therefor, including services rendered or costs incurred prior to the filing of the complaint.'' It covers past and future services and authorizes allowance of such amount ''as may be reasonably necessary for the cost of maintaining . . . the action and for attorney's fees.''

True, the motion must be upon notice which fairly advises the opponent of what he will have to meet. This notice did do that. If defective, we would not be disposed to reverse for the hearing consumed 16 court days and there is no showing of prejudice suffered by defendant from any alleged insufficiency of the notice. [■■ Pertinent here is the following passage from *Foster* v. *Foster,* 147 Cal.App.2d 338, 342 [305 P.2d 152], which quotes *Rose* v. *Rose,* 109 Cal. 544, 546 [42 P. 452] : '' 'In taking the evidence for the purpose of fixing the amount of the allowance, the court is not trying an issue in the case, but is seeking for information as the basis of its order, and is not bound by the technical rules of evidence applicable to controversies between contesting litigants.' ▆ And at pages 545-546, the court said: 'The court cannot know at the commencement of the action the amount of labor that will be required, or the value of the services to be performed in the prosecution or defense of the action on behalf of the wife, and there is no rule of procedure which requires it to fix the entire amount of counsel fees at the beginning of the action, or to prevent it from making allowances from time to time as the exigencies of the case shall seem to demand.' '' To same effect,

see *Youree* v. *Youree,* 1 Cal.App. 152, 155-156 [81 P. 1023] ; *Busch* v. *Busch,* 99 Cal.App. 198, 202 [278 P. 456].

Having endeavored to limit plaintiff's evidence to August 31, 1959 (date of notice of motion) as the latest cut off, appellant then turns to the original order of June 5, 1959, as the earliest limit, thus confining plaintiff's proofs to the brief period of less than three months intervening between June 5 and August 31. Espousal of June 5 as the earliest limit rests upon an assumed pertinence of the doctrine of res judicata.

## No Res Judicata

Appellant's claim of *res judicata* is misplaced. ▆▆▆ An order made on a motion is not res judicata in the same sense as a judgment; it is conclusive only upon matters specifically passed upon, not those which might have been presented but were not. *Cooper* v. *Miller,* 165 Cal. 31, 35 [130 P. 1048] : "That a decision of a court upon an order such as this may, in proper cases, be pleaded as *res adjudicata* is unquestioned. (*Lake* v. *Bonynge,* 161 Cal. 120 [118 P. 535].) But it is *res adjudicata* only upon the matters adjudicated under the motion. . . ." Accord : *Bannon* v. *Bannon,* 270 N.Y. 484 [1 N.E.2d 975, 977, 979, 105 A.L.R. 1401] ; *Jason* v. *Abramowitz,* 75 N.Y.S.2d 781, 783 ; *Baranowitz* v. *Baranowitz,* 13 Misc.2d 404 [176 N.Y.S.2d 856, 860] ; *Hill* v. *United States,* 298 U. S. 460, 466 [56 S.Ct. 760, 80 L.Ed. 1283] ; 60 C.J.S. § 65, pp. 81-82. See also *Becker* v. *Pine,* 193 Misc. 108 [83 N.Y.S.2d 749].

▆▆▆ In the instant case the allowance for attorney fees was expressly made "on account." That phrasing effects an implied reservation for later determination of the question whether a larger sum should be awarded. (*Hellman* v. *Hellman,* 108 Cal.App.2d 588, 594 [239 P.2d 458] ; *Huntington* v. *Huntington,* 120 Cal.App.2d 705, 712 [262 P.2d 104] ; *Griffin* v. *Griffin,* 122 Cal.App.2d 92, 100-101 [264 P.2d 167].) In the *Huntington* case this court said, at page 713 : "The phrase 'on account' could have no other reasonable meaning than that the allowance of $6,000 would be supplemented if the services actually rendered should justify a further award." Clearly "on account" leaves no room for application of the doctrine of res judicata. Any other conclusion would be directly in the teeth of section 137.3, Civil Code, which expressly authorizes the court from time to time before entry of judgment to "augment or modify the original award."

Cases cited by appellant, such as *Ojena* v. *Ojena,* 154 Cal. App.2d 440 [316 P.2d 414], *Barker* v. *Barker,* 139 Cal.App.2d

206 [293 P.2d 85], and *Hardy* v. *Hardy*, 117 Cal.App.2d 86 [255 P.2d 85], are not pertinent. They are to the effect that an allowance should not be made in support of an appeal where it appears that same was not taken in good faith. No question of res judicata was involved in them. Nor is *Worthley* v. *Worthley*, 44 Cal.2d 465, 473 [283 P.2d 19], which was considering the modification of a New Jersey decree, opposed to the views hereinbefore expressed. When the court there said, "[i]f the installments are modified prospectively, the issues thus determined will be res judicata so long as the circumstances of the parties remain unchanged (*Snyder* v. *Snyder*, 219 Cal. 80, 81 [25 P.2d 403] ; *Ralphs* v. *Ralphs*, 86 Cal.App.2d 324, 325 [194 P.2d 592] ; *Molema* v. *Molema*, 103 Cal.App. 79, 81 [283 P. 956] )," it was considering the law without reference to the effect of section 137.3 Civil Code and its expressed conferring of jurisdiction to modify at any time before judgment; the cases cited in the above quotation show this to be true. Moreover, the court was not concerned with an award of attorney fees "on account."

II. Appellant argues next that "the trial court abused its discretion by ordering defendant to pay additional attorneys' fees and costs where the evidence clearly established defendant's inability to pay additional attorneys' fees." The burden of the argument is that the evidence clearly showed that the husband had "a cash deficiency, i.e., payment of Defendant's total necessary obligations and commitments or required cash expenditures had exceeded and was continuing to exceed Defendant's cash receipts, and hence he was unable to pay additional attorneys' fees." Secondly he says that "[t]he Court's unintelligent remarks, interruptions and consideration of this evidence suggests that the Court failed to understand general accounting principles and/or the general testimony and evidence offered by Defendant relating to Defendant's financial information and tax problems, or that the Court arbitrarily ignored this evidence."

Plainly, a past or present cash deficit does not control the question of ability to pay. (See *Peyre* v. *Peyre*, 79 Cal. 336, 340 [21 P. 838] ; *Webber* v. *Webber*, 33 Cal.2d 153, 160 [199 P.2d 934] ; *Pencovic* v. *Pencovic*, 45 Cal.2d 97, 102-103 [287 P.2d 501] ; *McGann* v. *McGann*, 82 Cal.App.2d 382, 388-389 [186 P.2d 424].) Appellant had a law practice of some $90,000 net per year, fractional interests in 25 oil wells, at least four of which were on production at time of hearing; also other assets.

The obligation to provide for the wife is not subordinate to those owed other persons. If necessary the husband must invade his investments to provide the wife with the sinews to conduct her litigation with him. It is said in *Bailey* v. *Superior Court,* 215 Cal. 548, 553 [11 P.2d 865] : "The fact that petitioner is deeply in debt and has no present income is not, however, determinative of his ability to pay this particular sum. Payment for the support of his minor children is as truly a legal obligation as the repayment of his loans or payment of his other business debts, and it is not necessary that payment for their support be made out of his net income, or assets which he may possess in excess of his debts. It may be a hardship, as petitioner contends, to require petitioner to apply his meager assets to the payment of this particular obligation rather than permit him to apply them toward the rehabilitation of his business, if such rehabilitation be possible. But the question of the advisability of requiring him to apply his assets, if any, to the payment of such obligation was, in the first instance, a matter for the determination of the trial court, and we are not inclined to disturb its conclusion." To assure the wife of proper support the Civil Code provides, in section 140 : "The court may require any person required to make any payments under the provisions of this article to give reasonable security therefor and may enforce the same by the appointment of a receiver, or by any other remedy applicable to the case." This includes *inter alia* a declaration of a lien upon the husband's property to secure the award (16 Cal.Jur.2d § 237, p. 527), whether permanent (*Reed* v. *Hayward,* 23 Cal.2d 336, 341 [144 P.2d 561]), or temporary (*Nichols* v. *Superior Court,* 1 Cal.2d 589, 599 [36 P.2d 380, 95 A.L.R. 894] ; *Guay* v. *Superior Court,* 147 Cal.App.2d 764, 767 [305 P.2d 990]), and of course the lien may include attorney fees.

▮▮▮▮ Concerning the evidence which appellant says the court did not understand, he refers to summaries of his book accounts, his tax liability, contingent tax liability, "financial net worth" as shown by his own books of account, "book value of all assets," and complains that the court did not understand the evidence but "relied only on a very limited and incomplete portion of the evidence." At most, this presents a field for review of the evidence and its fair inferences, a function a reviewing court does not perform. The court said, in deciding the matter : "Without reviewing all of the evidence submitted to the Court, without intending to even review any great portion of it, the Court will refer only to that portion of it

which the Court feels is material with reference to the matter of attorneys' fees insofar as it relates to the defendant's ability to pay, and the necessity for said services on the part of plaintiff's counsel. A Mr. Fred Luke testified, that is, or was corroborated in the main by the testimony of Mr. Rosenthal himself, that in addition to his extensive legal practice that he has a beneficial percentage, although fractional interest in some 25 oil wells. That of the 25 oil wells, four of those are new oil producing wells which he has made investments in since May of 1959. The Court's recollection of the evidence with reference to Mr. Rosenthal's income from the practice of law is that from the period from June, 1959 through January of 1960, a period of approximately eight months, that his net income from the practice of law was in excess of $61,000.00. On that basis Mr. Rosenthal's net income from the practice of law would be over $90,000.00 per year.'' We cannot say that the court erred in thus disposing of the matter. He was not bound to believe all of defendant's testimony or that of his witnesses, or the accuracy of his book accounts.

*Wiley* v. *Wiley,* 183 Cal.App.2d 588, 591 [7 Cal.Rptr. 73] : ''There is, of course, no rule of law which limits the amount the court may award for a wife's support and expenses of suit to a share of the income of the husband, regardless of his financial worth.'' In *Howard* v. *Howard,* 141 Cal.App.2d 233, 238 [296 P.2d 592], we said: ''The judge's experience and knowledge afford sufficient basis for fixing the amount of the lawyer's fee even in the absence of specific evidence on the subject. (*Jones* v. *Jones,* 135 Cal.App.2d 52, 64 [286 P.2d 908] ; *Lewis & Queen* v. *S. Edmondson & Sons,* 113 Cal.App.2d 705, 708 [248 P.2d 973] ; *Libby* v. *Kipp,* 87 Cal.App. 538, 544 [262 P. 68].) In the last cited case it is said: 'It is perhaps difficult to conceive of any record that could be presented to the appellate court which would give less light upon the subject to be determined than a transcript relating to the fees or compensation that should be awarded for professional services, for the simple reason that only a few pages of testimony or a few simple statements contained in the record may be necessary to state the proceedings taken and had so far as the court records are concerned, whereas the time required to ascertain and determine the proceedings that should be taken or the skill required to determine the proper proceedings to be taken are the real elements which enter into the value of the services for which compensation is properly awarded, cannot be placed upon, and never do appear on a typewritten or

printed [p]age. It is for this reason that the matter of awarding compensation for professional services, when that service is rendered by an attorney, is left, to so great a degree, in the judicial discretion of the trial court, so much so that unless the sum allowed is plainly and palpably exorbitant and such as shocks the conscience of an appellate court, the determination of the trial court will not be disturbed.' "

III. Next appellant argues that the instant award would compensate plaintiff's attorneys for services that were unnecessary, nonlegal and unskillful; that the time expended by plaintiff's counsel, 365¾ hours through February 1960, was excessive and an hourly rate of $50 likewise exorbitant; that the court relied on this testimony and inferentially that its award was made upon this basis; but the court did not allow $50 an hour and this contention presents another fact issue which we do not review.

In this connection appellant also argues that plaintiff's counsel indicated he was not relying on a court award requiring the husband to pay his fee and hence there was no showing of necessity of making an award for attorney fees. No authority is cited in support of this argument which harks back to the rule existing prior to the amendment of section 137.3, Civil Code, in 1953, providing for the awarding of costs and attorney fees for services or costs incurred prior to any application therefor. (See 16 Cal.Jur.2d § 193, p. 483; 1 Armstrong, California Family Law, 1961 Cumulative Supplement, p. 87.) Armstrong, referring to pages of the text, says: "Beginning with the case of *Lacey* v. *Lacey* (p. 313) all the material up to the excerpt of *Gay* v. *Gay* (p. 317) should be discarded as of no current importance. The revision of CC § 137.3 in 1953 included the provision that: 'Attorney's fees and costs within the provisions of this section may be awarded for legal services rendered or costs of action incurred prior to, as well as subsequent, to any application or order of court therefor, including services rendered or costs incurred prior to the filing of the complaint.' This change alters the rules worked out by the cases and disposes of the whole problem discussed therein. The statute now spells out the controlling principles."

IV. Appellant asserts abuse of discretion by the court in finding that plaintiff and her attorneys acted in good faith, "where the evidence clearly and overwhelmingly shows that a great portion of the legal services had been motivated by bad faith on the part of both plaintiff and her counsel." This

presents merely another question of fact resting upon conflicting substantial evidence. In this connection the trial court remarked that defendant had represented himself primarily throughout the hearing, and further said: ''There has been a claim by the defendant of bad faith on the part of plaintiff's counsel. There has been a severe castigation right here in court by defendant of the conduct of Mr. Crowley and Mr. Ruderman, counsel for the plaintiff. They have been charged with stupidity and conspiracy between themselves, and also possibly with the assistance and aid of their client, Mrs. Rosenthal. In that connection the Court should make these observations, that no evidence, certainly no credible evidence of any kind or character was submitted to this Court to evidence any bad faith on the part of Mr. Crowley or Mr. Ruderman. On the contrary, the evidence has satisfied this Court that the lengthy, innumerable and tedious legal services rendered by the counsel for the plaintiff, by Mr. Crowley and Mr. Ruderman, were made necessary by the tactics of the defendant and his numerous counsel. The services were, therefore, made absolutely necessary by those tactics, and that is further borne out by the unconscionable length of time of these proceedings.

''So the Court makes a finding that there was no evidence whatsoever of bad faith on the part of either the plaintiff, Mrs. Rosenthal, since she is likewise accused of being a conspirator with her counsel, nor is there any evidence of any bad faith whatsoever on the part of Mr. Crowley or Mr. Ruderman in representing Mrs. Rosenthal in connection with any of these extended hearings and proceedings.''

V. Prejudicial error in excluding competent and relevant evidence is alleged. ▆▆▆ The first specification is exclusion of evidence of declarations of Mrs. Rosenthal to the effect that she was not interested in conserving the funds of the community and did not care if they were wasted, and that she wanted court litigation to hurt defendant all she could. This is said to have occurred in March 1959, about the time of filing the action. It could not be impeachment testimony for no foundation was laid. Plaintiff's motive in bringing or prosecuting the action is immaterial. If she has a good cause of action any malice in prosecuting it cannot subtract from the merits. If she does not have one the event will prove the fact. Her motives in commencing the suit are immaterial to the question of what allowances she should have during its pendency in order to establish her claims (see 1 Cal.Jur.2d § 12, p. 591) where advanced in apparent good faith. The fees now in question were

allowed for additional services rendered prior to March 1, 1960, $7,500; services on order to show cause, $5,000; defense of three pending appeals, $1,500 each, total $17,000. The court found upon substantial evidence that all these services were necessary and were rendered in good faith; what plaintiff's original attitude toward litigation may have been is immaterial.

Exclusion of Mr. Crowley's checkbook stubs was not erroneous, for they could bear only on his professional earnings and were excluded in the exercise of a sound discretion through limiting the evidence in an unduly protracted hearing.

Proffered testimony of defendant and Mrs. Davis as to work performed for defendant in and about this litigation could at best reflect upon his own good faith, and that was not in issue. In so far as such evidence would tend to support a claim that plaintiff's attorneys forced defendant to do an unwarranted amount of labor in his defense, it was cumulative and properly excluded as such.

VI. Appellant further says: "The judicial bias, hostility and prejudgment demonstrated by the trial court prevented defendant from having a fair trial and constituted an abuse of discretion and reversible error." This argument invites us to judge between appellant and the trial judge as to who was responsible for delay in the hearing, and whether there was abuse of discretion in setting a time for the end of the hearing and in enforcing that limitation. As heretofore indicated, it consumed 16 court days; appellant, though other lawyers were associated with him, conducted practically all the proceedings. On March 17th the court said: " .In the opinion of the Court, this Court has given the defendant ample opportunity of presenting his evidence in opposition to the motion of the plaintiff for additional and supplemental attorneys' fees. Actually, in the opinion of the Court, there has been an unconscionable length of time that has elapsed since the institution of these proceedings by way of an order to show cause in re attorneys' fees. In effect, this is merely a short cause matter, it is not a trial on the merits. The Court, therefore, is advising the defendant and his counsel that the Court will allow the defendant a maximum of two and a half additional days, in other words, this hearing must be and will be concluded no later than 4:00 p. m. on Friday of this week, March 19th." The reference to two and a half days was corrected to one and a half days, and the court continued: "One and a half days, then. I thought today was Wednesday. Until Friday, and that will include likewise any and all oral argument. If counsel

want to argue this case, the Court is going to limit counsel to thirty minutes on each side, which means that the arguments will have to be concluded likewise by 4:00 p. m. on Friday. I make this statement to you, Mr. Rosenthal, at the start of this afternoon's session of the court, in view of the fact that even though you had been on the defense some one, two, three, four, five, six, seven, eight, nine, ten, eleven or twelve days, you have not as yet taken the stand in your own behalf. The Court doesn't know whether you intend to or desire to take the stand in your own behalf, but if you do, of course, your testimony likewise will have to be concluded no later than 4:00 p. m. by Friday.'' This is reflected in the transcript at page 2150. The hearing then ran on until March 21—to page 2386 —with the appellant's own testimony occupying over 120 pages. On March 18, the following occurred: ''THE COURT: Yes. You were informed two weeks ago by this Court that the Court anticipated the hearing would be concluded on Friday of that week, and since that time you have persistently refused to advise the Court as to how long you anticipate your entire defense would take. This is your first intimation that at least insofar as your own examination is concerned, that you would need another hour and a half for your direct examination. . . . MR. ROSENTHAL: . . . My point is, *I don't care what your Honor advised me as to your intention to limitation,* I don't believe that is a legally sound position, and that is the point. [Emphasis added.] I have a right to continue to offer material evidence, and I have a lot of it to offer, which your Honor is precluding by his limitation. THE COURT: Well, you had the opportunity of offering it over the last 13 days of this order to show cause. . . . Well, the record is the best evidence. MR. ROSENTHAL: That is right. THE COURT: As to who was using the time. MR. ROSENTHAL: That is right, your Honor, and I just want to say that I have much more evidence which is material to the issues of this case, and indispensable to its decision. THE COURT: Well, the record as you have indicated, that you are going to appeal, will reflect the materiality of some of these proceedings over the last 13 days. MR. ROSENTHAL: That is right. THE COURT: So, the Appellate Court would probably conclude this other material evidence would be along the same line to the material evidence thus far produced during the some 11 or 12 or more days of your defense to this order to show cause. MR. ROSENTHAL: Introduced or volunteered by the other side. THE COURT: You may step down. You are all through as a witness, Mr. Rosenthal. MR. ROSENTHAL:

Thank you. I would like the record to show my testimony is not complete, as I think it does. . . . THE COURT: All the Court can say is this, I am satisfied from the Court's past experience with the defendant, who has been representing himself primarily in the defense of this order to show cause, that the proposed evidence would take in excess of two hours in order to put on, but, in any event, the Court, you have your record now, the Court is not going to permit you to put on any additional evidence along the line indicated. MR. ROSENTHAL: May I add just one for the record, one other basis for materiality or contended basis for materiality, if the Court please? The offer of testimony or evidence is further intended to show the character, consequence and quantitative aspects of the harassment and annoyance and wasteful expense caused by the plaintiff and her representatives to the defendant and cross complainant and his representatives, all resulting from the acts which rest in the bad faith as it is alleged and contended of the plaintiff, imputable or imputed, or as well as and directly to the bad faith of the plaintiff's counsel. . . . As to what the evidence would show, most of the evidence has been precluded on the rulings, the propriety of which will later be decided. As to the meaning of the evidence, that is a matter of argument. THE COURT: Yes. The Court will not permit you to put on that additional evidence.''

Long hearings, with many meticulous and reiterated objections and motions phrased in language lacking in normal respect for the court, are calculated to develop an unhappy atmosphere which, however, does not necessarily connote hostility or prejudgment on the part of the judge. He has the duty of expediting the hearing, sorting wheat from chaff, the prerogative of excluding unnecessary cumulative evidence, and the obligation generally to see that time is not wasted. Respondent's counsel well say in their brief: ''A Court need not be ground to a complete standstill by the unnecessary repetitions and de minimis protractions of a clever litigant.''

As said in *Estate of Dupont*, 60 Cal.App.2d 276, 290 [140 P.2d 866] : ''It apparently.cannot be repeated too often for the guidance of a part of the legal profession that a judge is not a mere umpire presiding over a contest of wits between professional opponents, but a judicial officer entrusted with the grave task of determining where justice lies under the law and the facts between the parties who have sought the protection of our courts. Within reasonable limits, it is not only the right but the duty of a trial judge to clearly bring out the

facts so that the important functions of his office may be fairly and justly performed. [Citations.] For the same reason the trial judge is not to be unduly or unreasonably hampered in his control and conduct of the trial. [Citation.]"

*Gantner* v. *Gantner*, 39 Cal.2d 272, 278 [246 P.2d 923]: "The other charges of prejudice involve only adverse rulings or attempts by the trial judge to direct the course of the trial. There is no evidence of misconduct. A trial judge is not a mere passive spectator at the trial." See also *Kurtz* v. *Kurtz*, 189 Cal.App.2d 320, 327 [11 Cal.Rptr. 230]; *Bolander* v. *Thompson*, 57 Cal.App.2d 444, 449 [134 P.2d 924]; *Seidenberg* v. *George*, 76 Cal.App.2d 306, 309 [172 P.2d 891]. We cannot uphold this contention of appellant.

Other arguments advanced by appellant warrant no further or separate discussion.

The order involved in appeal No. 25115 must be affirmed.

APPEAL No. 25340.

Appeal from order of September 12, 1960, modifying order of June 5, 1959 (as corrected by *nunc pro tunc* orders of December 15, 1959 and December 30, 1959), which requires defendant to pay for plaintiff's support and maintenance $75 per week in addition to amounts previously ordered. This spells a total of approximately $600 a month plus occupancy of the home and some lesser items.

Appellant's arguments revolve around the claim of res judicata, which plea is controlled by the authorities cited under the heading "No Res Judicata" in section I of this opinion dealing with appeal No. 25115.

The original support order of June 5, 1959 (for some reason) was not appealed. It provides for payment to plaintiff of $75 per week commencing June 10, 1959, and "continuing until further order of Court." The quoted phrase is the equivalent of the words "on account" used in the attorney fee order considered *supra* in section I of this opinion. It implies a reservation of jurisdiction to modify prospectively at any future time and seems to bring the situation within *Harth* v. *Ten Eyck*, 16 Cal.2d 829, 833-834 [108 P.2d 675], wherein the court, affirming an order vacating an order dismissing the action, said: "When the motion to vacate was before the court on the conflicting affidavits already on file, the court's power then to weigh the conflicts was the same as upon first consideration thereof. In other words, the power of the court to

resolve the conflicts was not exhausted by its conclusions on the order of denial, but it had the power to re-examine the evidence and arrive at a different conclusion, if it thought the ends of justice would be best served thereby. Unless an abuse of discretion was committed, the final order of the court should be permitted to stand." (*Cf. Beyerbach* v. *Juno Oil Co.*, 42 Cal.2d 11, 29 [265 P.2d 1].) Moreover, Civil Code section 137.2, enacted in 1951, says: ". . . Any such order may be modified or revoked at any time during the pendency of the action except as to any amount that may have accrued prior to the order of modification or revocation."

*Larsen* v. *Larsen*, 101 Cal.App.2d 862, 865 [226 P.2d 650]: "In *Gay* v. *Gay*, 146 Cal. 237, 242-243 [79 P. 885], it is expressly recognized that, as part of temporary alimony, a payment of a lump sum for past expenses may be allowed when such is necessary to enable the wife to further prosecute her case and to support herself upon the amount to be paid to her periodically in the future. (See also *Reed* v. *Reed*, 40 Cal.App. 102, 106-107 [180 P. 43].)" At page 867: "The major part of the amount ordered to be reimbursed relates to indebtedness for necessaries incurred between the separation of the parties and the beginning of the monthly alimony payments on December 23, 1948. We cannot say that the superior court abused its discretion when in accordance with *Gay* v. *Gay, supra,* it ordered defendant to repay the amount of such indebtedness. By not appealing from the original temporary alimony order defendant conceded that plaintiff needed his support." At page 868: "Appellant argues that he cannot be taxed for such expenditures made subsequent to the order for alimony pendente lite and that his liability was limited to the monthly payments ordered until that award was properly modified by the court. It is our opinion that the order to pay said amounts constitutes such modification of the alimony by the court and was properly within the court's discretion. The necessity of incurring the indebtedness caused by defendant's behavior constituted new circumstances which in the court's discretion might justify an increase in award. (*Miller* v. *Miller*, 57 Cal. App.2d 354, 360 [134 P.2d 292].) . . . The principle of the *Gay* and *Reed* cases, *supra,* that alimony may be granted retroactively and/or partly in lump sum when such is necessary to prevent old indebtedness from hampering the ability of the wife to live on future monthly alimony payments, we consider also applicable to increase in alimony. With respect to the necessity in this case the same applies to the payments for

necessaries provided after December 23, 1948, as to those prior to that date.''

Appellant's arguments are reiterations of these two propositions stated in the opening brief: ''The rule is clear that a prior final order *re* support is *res judicata* as to all matters that could have been or which were litigated in the hearing resulting in that order''; ''Further, it is not necessary that Plaintiff have actually litigated her support needs, but merely that she had had the opportunity to present her support needs in order to invoke the rules of *res judicata*.'' Herein lies a misconception of the application of the doctrine of res judicata to orders made upon motion. As stated in *Cooper* v. *Miller, supra,* 165 Cal. 31, 35, such an order is *''res adjudicata* only upon the matters adjudicated under the motion.'' Numerous other cases are cited in section I, *supra,* to the same effect.

Proceeding from this faulty premise appellant argues that it was error to receive or consider evidence of facts antedating an order of June 1, 1960, which, as he says, granted additional attorney and accountant's fees but no additional alimony. Again he postulates that '' [a]ll of these facts alleged as constituting a change of circumstances by Plaintiff were in existence considerably earlier and prior to the May, 1960 hearing, resulting in the June 1, 1960 Order, and could have been fully litigated in earlier hearings resulting in final Orders, and such evidence should therefore have been barred in the instant hearing under principles of *res judicata*.'' This position is unsound for the reason, among others, that a judgment or an order never operates as res judicata of an issue which the court clearly did not determine. Respondent's brief says: ''The motion *re* temporary alimony pending appeal was not ruled upon; the June 1, 1960 Order does not dispose thereof; same was removed by Stipulation.'' This stipulation does not appear in the record but appellant has not filed a reply brief and we therefore are justified in accepting this statement as correct. (*H. Moffat Co.* v. *Rosasco,* 119 Cal.App.2d 432, 443-444 [260 P.2d 126] ; *Ribero* v. *Callaway,* 87 Cal.App.2d 135, 137 [196 P.2d 109] ; *Willson* v. *Security-First Nat. Bank,* 21 Cal.2d 705, 712 [134 P.2d 800].) In any event respondent's assertion emphasizes appellant's position that the order of June 1, 1960, did not rule upon respondent's request for additional allowance.

The factual situation disclosed by the record, viewed in the light most favorable to respondent, is as follows: On June 5, 1959, the order for $75 support money per week was

made "continuing until further order of Court." On December 15, 1959, it was modified *nunc pro tunc* to provide that plaintiff pay out of an additional award of $75 a month all utility bills including telephone bills. On December 30, 1959, another order was made *nunc pro tunc*. It ordered that Mr. Edward M. Raskin, as trustee of a $1,200 trust fund, pay to Mrs. Rosenthal $200 for alimony indebtedness of defendant, reimburse plaintiff two specified sums of money, and pay certain outstanding bills, then pay defendant $14.60, the balance of the trust fund. It also ordered payment of $200 attorney's costs by defendant, and "defendant is ordered to pay to plaintiff the additional sum of $75 per month for her further support, from which sum plaintiff shall apply on all utility bills including the telephone bills and plaintiff shall pay the balance of such utility and telephone bills." This order expressly supersedes the requirement that defendant pay to plaintiff $100 a month for utilities.

On August 14, 1959, *defendant* had initiated a motion to modify the order of June 5, 1959. Heard in February, 1960, the court on the 26th further modified the order of June 5, 1959, as follows: "Commencing with the next payment due in March 1960, defendant is ordered to pay $450.00 per month on the payment on the family home, and plaintiff is ordered to pay $50.00 per month on payment on family home in any month that she receives $100.00 or more from her niece or any other person for occupancy of the guest house or in the family home. . . . In any month that plaintiff does not receive $100.00 or more for said occupancy, defendant is ordered to pay the full payment of $500.00 on the family home. . . ."

On April 25, 1960, plaintiff gave notice of two motions, one of which eventuated in the order of June 1, 1960, upon which appellant bases his argument of res judicata. By this motion plaintiff sought additional attorney fees and costs in connection with defendant's appeal from Judge Brandler's order of March 21, 1960 (appeal No. 25115); also payment of accounting fees and appointment of a receiver. In the other motion plaintiff sought further temporary alimony in order to meet necessary utility charges pending appeal from order of December 30, 1959 (the second *nunc pro tunc* order above mentioned). The record does not show that these two motions were heard together and counsel for respondent say in their brief that the motion for further alimony "was disposed of by stipulation between the parties." Appellant having filed no reply brief, we accept this statement as correct. The order of

June 1st is silent on the subject of additional support. It thus abundantly appears that the court did not pass upon the motion for additional allowance for support. Therefore, under the authorities cited and discussed in section I of this opinion concerning No. 25115, it cannot possibly operate as res judicata on that subject. Were we considering a judgment rather than an order made upon motion this would be equally clear, for no adjudication operates as res judicata of an issue that plainly was not passed upon. *Barnes* v. *Dobbins,* 118 Cal.App. 2d 808, 814 [258 P.2d 1112] : "If authority for our conclusions be of interest, it will be found in Freeman on Judgments, fifth edition, volume 2, section 704, page 1485 : 'A judgment is not conclusive with respect to matters which the court rendering the judgment expressly or impliedly excludes from its determination or consideration, as in case of issues the adjudication of which it holds to be unnecessary, or which it holds to be not involved in the case.' '' (See also 29 Cal.Jur.2d § 245, p. 207.)

These authorities throw appellant back to the order of June 5, 1959, as the basis for his contention of res judicata (assuming arguendo that it is applicable to an interim support order) and they dispose of most of those contentions, predicated as they are upon the effect of the order of June 1, 1960.

The many cases which appellant cites to the effect that a showing of change of circumstances is a prerequisite to modification of a temporary award of alimony are not controlling in a case such as this one where the original order of allowance is expressly limited "until further order of Court." Even if those cases be deemed applicable, it seems evident that mere change in circumstances is enough and the sufficiency of such change is a question to be determined by the trial judge.

The instant situation suggests an analogy to modification of a custody order under section 138, Civil Code, which says: "In actions for divorce or for separate maintenance the court may, during the pendency of the action, or at the final hearing or at any time thereafter during the minority of any of the children of the marriage, make such order for the custody of such minor children as may seem necessary or proper and may at any time modify or vacate the same. . . ." In this connection the courts have reduced the "change of circumstances" rule to a mere matter of "evidence that the court may consider in the exercise of its discretion" (*Urquhart* v. *Urquhart,* 196 Cal.App.2d 297, 301-302 [16 Cal.Rptr. 469]).

*Goto* v. *Goto,* 52 Cal.2d 118, 123 [338 P.2d 450] : "This court has declared the so-called 'changed circumstance' rule

to be subject to exceptions where the welfare of the child requires it. 'We do not wish to be understood as holding that "the change of circumstance" rule is an absolutely iron-clad rule and that there can be no possible exception to it. It is perhaps possible to conceive of a case in which, despite the fact that there was apparently no change of circumstances, nevertheless, the welfare of the child might require that the previous order of custody be changed. . . .' (*Foster* v. *Foster*, 8 Cal.2d 719, 728 [68 P.2d 719].)''

*Kelly* v. *Kelly*, 75 Cal.App.2d 408, 415-416 [171 P.2d 95]: "It seems to us that the question of 'changed circumstances' is but another form of evidence which the court may consider in the exercise of its discretion to hear and decide the question of modification of custody orders previously made. But notwithstanding 'changed circumstances,' there can be no doubt that once jurisdiction attaches to grant a divorce and award custody of the minor children of the marriage, our statute provides that such jurisdiction is continuing and the power to amend, modify or annul an award of custody as existing conditions demand ever after remains. . . . The so-called rule means only that the action of the court in refusing to modify an order of custody unless there is a showing of 'changed circumstances' does not amount to an abuse of discretion.''

*Frizzell* v. *Frizzell*, 158 Cal.App.2d 652, 655 [323 P.2d 188]: "The rule that there must be a showing of 'changed circumstances' has no application where the trial court has modified a decree. That rule only applies where the trial court has refused to modify a decree and it is contended an abuse of discretion occurred. To show such abuse there must be a showing of changed cricumstances.''

To the same effect see *Dotsch* v. *Grimes*, 75 Cal.App.2d 418, 421 [171 P.2d 506]; *McKee* v. *McKee*, 76 Cal.App.2d 728, 731 [174 P.2d 18]; *Horsley* v. *Horsley*, 77 Cal.App.2d 442, 446-447 [175 P.2d 580]; *Noon* v. *Noon*, 84 Cal.App.2d 374, 380 [191 P.2d 35]; *Harris* v. *Harris*, 186 Cal.App.2d 788, 792 [9 Cal.Rptr. 300]; *Stack* v. *Stack*, 189 Cal.App.2d 357, 369-370 [11 Cal.Rptr. 177]. In *Stack* the court says, at page 370: "The only 'rule' consistently applied is that the court may modify or vacate its order 'at any time.' (Civ. Code, § 138; cf. *Exley* v. *Exley, supra*, 101 Cal.App.2d 835 [226 P.2d 662].) The mother's principal reliance is upon the change of circumstances 'rule.' As we have seen, it is no longer a rule, if it ever was one.''

This reasoning seems logically applicable to exercise of a

court's reserved power to modify or revoke support orders "at any time during the pendency of the action except as to any amount that may have accrued prior to the order of modification or revocation" (Civ. Code, § 137.2), especially where the order subject to modification was expressly made to continue only "until further order of Court."

Illustration of what has just been said concerning change of circumstances is found in *Howard* v. *Howard, supra,* 141 Cal.App.2d 233, 243, wherein this court reduced an attorney fee award because it had proved excessive in the light of subsequent events. The ruling is supported by *Warner* v. *Warner,* 34 Cal.2d 838, 841 [215 P.2d 20], therein quoted. ▮▮ The determination of whether the change in circumstances is so substantial as to warrant a modification of the support allowance, rests with the trial judge to be exercised in his sound discretion. Quoting *Howard* again, at page 239 : "The award thus reached cannot be set aside in the absence of a clear abuse of discretion. On the former appeal of this case, 128 Cal.App.2d 188, this court said at page 190 [275 P.2d 93] : 'Abuse of discretion is never presumed. It must be affirmatively established. A reviewing court is not authorized to revise the lower court's judgment even if it should be of the opinion that it would have made a different award had the matter been submitted to its judgment in the first instance, in the absence of a clear abuse of discretion.' In *Newbauer* v. *Newbauer, supra,* 95 Cal.App.2d 36, 40 [212 P.2d 240], the court put it thus : 'The discretion was the trial judge's, not ours; and we can only interfere if we find that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did.' "

▮▮ In the present instance it appears that defendant appealed from the order of October 30, 1959, directing Mr. Raskin as trustee to pay certain back alimony, reimburse to plaintiff certain sums she had borrowed, and to pay specified outstanding bills; defendant also effected a stay on appeal. He promptly appealed from the order of December 30, 1959, and did not pay plaintiff the $75 per month therein provided for payment of utilities. On March 31, 1960, defendant appealed from the order of March 21, 1960, wherein additional attorney fees of $17,000 were allowed, and posted a stay bond. He likewise appealed from the order of June 1, 1960, awarding attorney fees for defense of his appeal from that order of March 21, 1960 (No. 25115). Certainly respondent was thereby impeded substantially in the maintenance of herself and in

the defense of the orders on appeal. The instant appeal from the award of an additional $75 per week for her support and the giving of a stay bond in connection therewith is further evidence of hardship which is being worked upon her by the delaying tactics of defendant.

On the other hand, defendant's own financial condition had improved considerably before the making of the order of September 12, 1960, the one now on appeal. His net income from law practice had been $97,000 for the year 1958, $81,889.87 for 1959, and yielded $76,578 in the first six months of 1960. During that first half of 1960 he reduced his liabilities to the extent of $18,146. Defendant testified in May 1959, to a value of $210,000 upon his oil interests. Thereafter he acquired participations in new wells on leases known as Saunders and Shrubshall. (Defendant's objections to the use of his own records as a basis for these figures were not well taken. His books and other records are receivable as admissions against interest (5 Wigmore on Evidence, § 1557, p. 411; *Wentz* v. *Guaranteed Sand & Gravel Co.,* 205 Minn. 611 [287 N.W. 113, 115] ; *Shenson* v. *Shenson,* 124 Cal.App.2d 747, 752 [269 P.2d 170, 270 P.2d 896]).) These facts, coupled with others that the court considered, undoubtedly provided sound basis for exercise of the discretion which resulted in the allowance in question. Everything considered, $600 support money in addition to occupancy of the home seems not at all excessive.

The order in this appeal No. 25340 must be affirmed.

### Appeal No. 24688.

Appeal from those portions of order of October 30, 1959 (outlined under Appeal No. 25340, *supra*), which direct the trustee to pay out of a trust fund of $642.76 (originally $1,200) certain sums to persons other than defendant. He does not complain of the direction that the balance of $14.60 be paid to him. In support of this appeal we are presented with six volumes of reporter's transcript aggregating 565 pages, and an opening brief of 56 pages; no reply brief.

During the pendency of Mrs. Rosenthal's original order to show cause *re* temporary alimony, etc., the parties made, on April 21, 1959, a written stipulation which provides that plaintiff shall sign a quitclaim deed covering certain oil rights for which the Rosenthals were to receive "a twenty-five (25%) per cent interest in the total sum of $5,000.00, less their share of the attorneys' fees and costs to be charged against said sum"; that the Rosenthal share of the $5,000 be paid over to attorney Edward M. Raskin who, "will hold said funds

in trust in his clients account until an Order of the Court
directing the disbursement and disposition of the said funds
upon the hearing on May 7, 1959, of the Order to Show Cause
now pending, before Arthur K. Marshall, Judge Pro Tempore,
or upon such date or dates when said hearing is completed.
The parties may, without further notice of motion or affidavits
in connection therewith, present evidence concerning the
necessity and propriety of the appropriate disbursement of
said impounded funds at said hearing of said Order to Show
Cause.'' The hearing resulted in the order of June 5, 1959,
awarding support moneys for the wife and child, and an
attorney fee of $3,500 on account, directing defendant to make
house payments, utilities up to $100 per month, taxes and
insurance, and gardener for the home. It makes no mention
of the subject matter of the stipulation and hence did not
adjudicate the disposition to be made of the trusteed money.
Defendant took the position that the stipulation had thus
expired according to its terms and the money held by Raskin
should be paid over to defendant. By affidavit for order to
show cause which issued on July 17, 1959, plaintiff alleged the
trust fund to be approximately $1,200 and to be community
property,[1] recited the terms of the stipulation, and further
alleged: ''That at the time of the hearing of the Order to
Show Cause herein, the matter of the distribution of the said
sum of approximately $1,200 was deferred until such time
as the Court would be advised of the availability of said funds
for distribution''; that the fund was then in the hands of
Mr. Raskin, as trustee; also: ''The plaintiff and defendant
have been unable to mutually agree as to the disposition of
said funds, and the defendant has failed and refused to
cooperate in this regard. That as a direct result thereof,
plaintiff has been compelled to borrow sums of money to meet
the unpaid obligations of the parties in order to maintain
necessary utility services. That plaintiff has been subjected
to constant harassment and embarrassment by reason of the
dunning of plaintiff by unpaid creditors. That defendant has
caused the telephone, electric and gas services furnished to
plaintiff at the family residence to be disconnected by direct
order and/or non-payment. Defendant has also failed and
refused to pay the outstanding gardener bills owed to Jack
Kitashima, and has informed said gardener that he will no

---

[1]Appellant claims it as community property subject to his exclusive
management.

longer pay to him the sum of $80.00 per month as formerly paid, but would in the future compensate him only to the extent of $30.00 per month, thus depriving plaintiff of the services of said gardener." Plaintiff requested a modification of the order of June 5 by directing that the trusteed sum be disbursed as follows: (a) reimbursement to plaintiff of certain sums borrowed by her since the hearing of the first order to show cause; (b) payment of certain creditors in specified amounts; and (c) that the former order be modified in other respects. On the return date, July 24, the matter was continued but the order of that day said: "Based on stipulation of counsel, it is ordered that the $1200 fund be invaded as follows: $240 to be paid the gardener for back services; $200 to be paid A. D. Nast, Jr., for community debts; & an amount not to exceed $80 per month for continued services of gardener; all of these matters to be subject to review on the continued date; ... On the Court's own motion, it is ordered that out of the $1200 the telephone bill be paid and at the continued hearing the Court or commissioner shall assign charges against the proper parties. Defendant's motion to withdraw from the previous stipulation is denied." The matter was partially heard on October 8 and 9; on the 9th the court continued the matter to October 30, 1959 and ordered that "In the interim, Mr. Raskin is ordered to pay out of funds in his possession $168.43 to General Telephone Company and $34.34 to Southern California Gas Company forthwith." On October 30, 1959, the order now on appeal was made. It contains this: "Mr. Ruskin, trustee of aforementioned trust fund is directed to pay $200.00 directly to Mrs. Rosenthal for alimony indebtedness of defendant. It is further ordered that Mrs. Rosenthal be reimbursed the sums of $101.46 and $47.48. Mr. Ruskin shall pay the outstanding bills of $89.50, $25.00 and $164.42. The remaining trust fund balance of $14.60 is to be turned over to the defendant." At pages 13-16 opening brief, appellant enumerates respects in which his appeal is intended to "discourage and prevent Plaintiff Wife" or "to discourage and prevent Court and/or Plaintiff Wife."

Appellant in his elaborate brief relies upon three principal arguments, (1) res judicata, (2) necessity of change of circumstances, and (3) an automatic expiration of the trust fund and inability of the court to interfere with absolute managerial rights of the husband over community property. Items (1) and (2) are governed by the principles enunciated in our

consideration of appeals Nos. 25115 and 25340, *supra,* and require no separate treatment here.

In April 1959, before the hearing upon the original order to show cause, plaintiff's attorney and Mr. Raskin, who then was attorney for defendant, informally discussed the termination date of the trust stipulation and, as Mr. Raskin phrased it on the witness stand, "I . . . indicated to him that the funds would be held until an order of Court disposing of these assets would be made." At the time of the hearings of May 7 and May 14 upon the order to show cause, the funds to be impounded with Mr. Raskin were not in his hands and were never received until June 25, 1959. So the court made no order disposing of same on June 5. On July 24, the return date of the modification order to show cause, the court pursuant to stipulation ordered certain payments made from the fund in accordance with the above quotation from the order of that date. On October 9 a similar order was made, above quoted. About August 28th Mr. Raskin in response to a request from appellant's attorney, Mr. Cook, for payment to him of $520 out of the fund so he could disburse it pursuant to previous court order, advised "that I can't give him the money because the parties won't permit it, and I will hold it pursuant to order of Court. That is the effect of it, and I think that sums up the situation to date so far as these funds are concerned."

During the hearing on October 30 when the court said it would order $200 paid by the trustee to defendant, he himself said this had been paid by him to Mr. Nast by withholding it from Mrs. Rosenthal, and that it should be paid to her by the trustee. (Incidentally, this is one of the items mentioned in defendant's notice of appeal.)

Plainly, these request orders for disbursement of specific items from the trust fund were recognitions of its continued status of property in *custodia legis.* That this was the correct legal aspect of the matter is indicated by *Hise* v. *Superior Court,* 21 Cal.2d 614, 625 [134 P.2d 748].

 The argument that a husband during the progress of a divorce suit has "absolute and exclusive power and right to control and manage the community property, subject to the obligation to account" is novel indeed. One of the declared purposes of this appeal is "[t]o discourage and prevent Court and/or Plaintiff Wife (Respondent) from unnecessarily and improperly interfering with and/or usurping the Husband's absolute right of management and control of the com-

munity property." This suggests a New Frontier in the law, one which no man's foot has previously trod. Section 140, Civil Code (quoted under No. 25115, *supra*), completely disposes of the claim of a husband's exclusive and absolute control over the community property. It says that the court may require any person ordered to make payments, such as temporary alimony, attorney fees, etc., to give security for payment of same and that it may enforce the order for such payments by appointment of a receiver (thus taking the community property entirely out of the husband's control) or may enforce such payments "by any other remedy applicable to the case." This empowers the court to compel the husband to create a trust fund from community property as security for payment of alimony (*Witaschek* v. *Witaschek*, 56 Cal. App.2d 277, 282 [132 P.2d 600]), or it may by order create a lien upon such property. (*Reed* v. *Hayward*, 23 Cal.2d 336, 341 [144 P.2d 561]; *Nichols* v. *Superior Court, supra*, 1 Cal.2d 589, 599; *Guay* v. *Superior Court*, 147 Cal.App.2d 764, 767 [305 P.2d 990].) In fact, the husband's control of community property is wholly subject to the supervision and interference of the court during the pendency of a divorce action. The proceeding may be stayed until a recalcitrant husband has paid alimony or counsel fees as ordered. (16 Cal.Jur.2d § 243, p. 531.) "A court may, on a proper showing, issue an injunction to restrain a husband from alienating community property or his separate property, or from encumbering either kind of property. . . ." (16 Cal.Jur.2d § 244, p. 532.)

Cases such as *Vai* v. *Bank of America*, 56 Cal.2d 329, 336-337 [15 Cal.Rptr. 71, 364 P.2d 247], *Harrold* v. *Harrold*, 43 Cal.2d 77, 81 [271 P.2d 489], and *Jorgensen* v. *Jorgensen*, 32 Cal.2d 13, 21 [193 P.2d 728], are not contrary to the views herein expressed. They do not deal with the same problem and are concerned primarily with the continuance of the husband's fiduciary status during the pendency of the divorce action. In no way do they expressly or impliedly negate the control which the court may exercise for the protection of the wife during the litigation.

The situation at the time of making the order of October 30 was that both parties when convenience dictated had recognized the trust as continuing to exist. The trustee had refused to act without specific order of court, the money (at that time reduced to $642.76) was practically if not technically in *custodia legis*; it was community property and the court had power and discretion to require such disposition

to be made of it as effectuation of its previous orders and protection of the wife from captious and debilitating delays might require. The court did not abuse its discretion or exceed its jurisdiction in making the order of October 30.

Other arguments of counsel require no separate discussion. We find all of appellant's claims of error and want of jurisdiction to be untenable and the order must be affirmed.

### CONCLUSION

The records of these three appeals disclose that the respective trial judges were acutely conscious of appellant's persistently technical and dilatory opposition to plaintiff's motions and of his recurring offensive conduct and language toward the judge. Everything considered, each of these judges was patient beyond the call for equanimity and impartiality. None of them abused his discretion. We do not discount the fact that appellant was given considerable provocation by opposing counsel for his manifest choler, but that did not measure his own duty of respectful conduct toward the court and promotion of expeditious administration of the law, for he is an attorney at law.

The order involved in each of the appeals numbered 25115, 25340 and 24688, is affirmed.

Fox, P. J., and Herndon, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 17, 1962.