## BETTY ANN LENNON v. JOHN A. LENNON.

### (Filed 10 June, 1960.)

**1. Constitutional Law § 26—**

The full faith and credit clause of the Federal Constitution does not entitle a judgment *in personam* to extra-territorial effect when such judgment is rendered without jurisdiction over the person sought to be bound.

**2. Same: Habeas Corpus § 3: Infants § 8— Decree of foreign court held not to oust jurisdiction of our court to award custody of children.**

Where husband and wife are domiciled in this State and the husband surreptitiously removes the children of the marriage from this State to another state for the purpose of depriving our courts of jurisdiction over the children, a decree of divorce obtained by the husband in such other state awarding the custody of the children to him, obtained without personal service on the wife and without her appearance either in person or by attorney, does not deprive the courts of this State of juris-diction to determine the right of custody of the children in *habeas corpus* proceedings instituted by the wife after the children had been brought back into this State and are residing here with her. *Richter v. Harmon,* 243 N.C. 373, cited and modified.

**3. Appeal and Error § 49—**

A judgment on findings will not be disturbed because one of the find-ings is not supported by evidence when such finding is not necessary to support the judgment and does not affect the conclusion reached.

**4. Infants § 9— Findings held to support decree awarding custody of children to mother.**

In this *habeas corpus* proceeding to determine the right to the cus-

tody of the children of the marriage as between their divorced parents, findings to the effect that the mother was providing a suitable and healthful domicile for them with her in the home of her parents, that the mother was a woman of excellent character and reputation, that the children in a private interview expressed their desire to remain with their mother, that the home of the husband, presided over by his second wife, would not provide a suitable or happy environment for them, is tantamount to a finding that the best interest of the children would be served by placing them in the custody of their mother in the home of her parents, and supports decree to this effect.

APPEAL by defendant from *Sharp, Special Judge,* 19 October Term, 1960, of GUILFORD (Greensboro Division).

This is a proceeding instituted pursuant to the provisions of our Habeas Corpus Act, G.S. 17-39.1, to determine the custody of plaintiff's and defendant's children.

The plaintiff petitioner and the defendant respondent will be referred to hereinafter as plaintiff and defendant respectively, or by name.

The parties were married on 12 September 1944 in Winston-Salem, North Carolina. Barbara Ann Lennon, born 19 December 1947, and John A. Lennon, III, born 14 January 1950, are the children of the marriage and their custody is the matter in controversy.

On 16 October 1958, the defendant, without the knowledge or consent of the plaintiff, took the children in controversy and left the State of North Carolina and went to Reno, Nevada, in which State he still resides. He instituted an action for divorce in the State of Nevada on 5 December 1958 and obtained a final decree of absolute divorce on 6 January 1959. The Nevada court also awarded custody of the two children of the marriage to the defendant. The plaintiff was served with a copy of the summons and complaint by a Deputy Sheriff in Sumter, South Carolina, on 10 December 1958, but no appearance was made by the plaintiff in person or by attorney in the Nevada court.

On 26 January 1959, the defendant and Mrs. Mickie Gardner (who had obtained a divorce from her husband about the middle of October 1958) were married in Reno, Nevada, and have lived there since that time.

The defendant returned the children to North Carolina to visit their mother during the summer of 1959, and he contends he did so pursuant to a promise of the plaintiff to return them to him when he came for them later in the summer. The plaintiff denies that she promised to return them.

In the hearing below the court made 23 separate findings of fact.

The defendant excepted to and assigns as error findings of fact Nos. 5, 6, 7, 8, 9, 11, 14, 19 and 22, which are as follows:

"(5) That in February, 1955, the defendant met Mrs. Mickie Gardner at a dinner party in Greensboro, at which he and the plaintiff were guests; that he was immediately attracted to her and sometime between that date and June 22, 1957, an illicit, adulterous love affair began between Mrs. Gardner and the defendant; that this affair began and continued up to the time that the defendant departed the State of North Carolina, on October 16, 1958.

"(6) That as a result of this affair, which became known to the plaintiff, the married life of the plaintiff and the defendant was thereafter punctuated with violent quarrels and serious emotional disturbances on the part of the plaintiff; that these upheavals brought on excessive use of alcohol by the plaintiff, which in turn resulted in stormy quarrels and separations between them; that the parties separated during the latter part of December, 1957, and remained separate and apart until sometime in July or early August of 1958; that during this period of separation, the defendant continued his affair with Mrs. Gardner; that during this period the plaintiff's parents requested the defendant to send her to a sanatorium for treatment, but he refused to do so, and the plaintiff's parents sent her to a sanatorium at St. Albans in January, 1958, and later to a sanatorium at Pine Bluff and paid the bills when the defendant refused to pay them; that although the plaintiff was being treated for alcoholism, on one occasion when the defendant visited her at Cone Memorial Hospital in Greensboro he took whiskey to her; that while the plaintiff was hospitalized, the plaintiff's parents, Mr. and Mrs. P. O. Barber, looked after and cared for the children.

"(7) That on July 3, 1958, the plaintiff filed a suit against the defendant, under G.S. 50-16, in the Superior Court of Guilford County, Greensboro Division, in which the plaintiff sought custody of the children, permanent alimony, alimony *pendente lite*, and attorney's fees; that in said action, the Judge of the Superior Court had entered an order, temporarily restraining the defendant from removing any of his property from the State of North Carolina; that within minutes after the defendant was served with summons and a copy of the complaint in that action, he went to the home where the plaintiff and the children were then residing on West Greenway South, in Greensboro, North Carolina, and announced to the plaintiff that he desired to become reconciled with her and was coming back home; that the plaintiff continued to be very much in love with her husband and greatly desired a reconciliation provided he would break off his affair with

Mrs. Gardner; that he promised to do this if the plaintiff would permit him to return and if she promised to stop drinking; that as a result the defendant moved back into the home on West Greenway South, late in July or early August of 1959; that on October 13, 1958, the action instituted under G.S. 50-16, and the restraining order ancillary to it, was dismissed for the reason that the parties reported to the Court that they had become reconciled; that in returning to the plaintiff and in securing the dismissal of the action the defendant did not act in good faith, that he did not intend to become reconciled with the plaintiff at the time he returned home but sought the reconciliation in order to dissolve the injunction which forbade him to remove his property from North Carolina and in order to deprive the courts of North Carolina of their rightful jurisdiction over the children.

"(8) That shortly after the purported reconciliation in July or August, 1958, the defendant renewed his adulterous affair with Mrs. Gardner and continued to live in the same house with the plaintiff while so doing; that as a result the plaintiff again verged on emotional collapse and turned to alcohol; that although defendant shared the responsibility for plaintiff's alcoholism, and although the defendant continued to berate the plaintiff for her alcoholism and to complain that that was the sole cause of their matrimonial difficulties, he, himself, continued his habit of social drinking and did nothing whatever to help the plaintiff overcome her problem; that in August, 1958, he brought alcohol into the home, well knowing that if he did so, the plaintiff would drink it; that on September 26, 1958, the plaintiff was tried and convicted of drunken driving in the Greensboro Municipal Court; that although the defendant paid her fine, he did not employ counsel to represent her but did employ a court reporter to take down and transcribe the evidence against her; that the conduct of the defendant during this entire period justifies the inference that he had decided to encourage the plaintiff's alcoholism as an apparent justification and escape from a marriage which had become hateful to him; that he refused to cooperate with the plaintiff's family in their efforts to rehabilitate her.

"(9) That on October 16, 1958, the plaintiff was emotionally and mentally ill and as a result had become an alcoholic; that the defendant's unlawful conduct had, in large measures, contributed to her condition.

"(11) That the first place the defendant went to when he arrived in Reno on October 21, 1958, was to the office of a lawyer in order to make arrangements to obtain a divorce from the plaintiff; that

through the lawyer's secretary he secured a furnished apartment in Reno; that the defendant put the children·in school in Nevada, where they finished out the school year; that the defendant left North Carolina and went to Nevada for the purpose of obtaining a Nevada decree of absolute divorce from the plaintiff and to remove the children from the jurisdiction of courts of North Carolina; that at the time he left, he·did not intend to return to North Carolina to live, ·and he intended to remain in Nevada long enough to obtain a divorce which he believed would not be subject to attack; that at the present time he still maintains an apartment in Reno, Nevada.

"(14) That after the marriage between the defendant and Mrs. Gardner, she came to live with the defendant and the children in the apartment and the children were in her care and custody during the defendant's absence from town on his business trips; that regularly in the evening of each day the defendant and Mrs. Gardner drank one or two cocktails in the presence of the children and allowed the children to sample the drinks; that the twenty-one-year-old daughter of Mrs. Gardner, as a result of Mrs. Gardner's marriage to the defendant, has become a member of the defendant's household and he has assumed responsibility for her education; that in the early part of 1959, defendant leased an apartment in Mill Valley, California, which has been furnished with Mrs. Gardner's furniture, which was shipped from North Carolina; that this apartment is occupied from time to time by the defendant and Mrs. Gardner; that in June of 1959, the defendant went to a parochial school, located a short distance from the apartment in Mill Valley, California, and made preliminary inquiries with reference to entering the children in that school for the school year of 1959-60; that defendant's business address since he left Greensboro, North Carolina, has been in San Francisco, California, where his employer maintains an office; that the defendant is connected with the furniture business and travels in eleven western states; that defendant's work, which requires him to travel extensively, necessitates his absence from his home much of the time.

"(19) That the plaintiff is no longer addicted to the use of alcohol and is now a fit, suitable, and proper person to have the care and custody of her children; that the best interests and welfare of the children will be served and promoted by placing them in the custody of the plaintiff, in the home of Mr. and Mrs. P. O. Barber.

"(22) That since the entry of the decree in Nevada on January 6, 1959, there has been a change in the condition of both the plaintiff and defendant in that:

"(a) The defendant has since married Mrs. Mickie Gardner, the woman with whom he had the affair which caused the break-up of his marriage with the plaintiff;

"(b) That the plaintiff is no longer addicted to the use of alcohol, which excessive use was brought on by the affair between the defendant and Mrs. Gardner;

"(c) That the plaintiff is now able to assume the responsibility and care of her children and that the best interests of the children require that their custody and upbringing be given to their own mother rather than to Mrs. Mickie Gardner and the defendant."

Upon the foregoing findings of fact and other unchallenged facts, the court below concluded as a matter of law:

"(1) The plaintiff and the defendant are properly before the court for the adjudication of their rights in this proceeding.

"(2) Matrimonial domicile of the plaintiff and the defendant is the State of North Carolina, and both were residents of and domiciled in North Carolina at the time the defendant left the plaintiff and fled the State in October, 1958.

"(3) That the plaintiff is now a resident and domiciled in North Carolina; that except for the short duration of her stay in Virginia with the defendant, in the fall of 1957, she has been a resident of North Carolina since 1949; that the two children, who are the subjects of this action, are now residents of and domiciled in North Carolina.

"(4) That said children are subject to the jurisdiction of the courts of North Carolina and are now properly before this court for the determination of their custody and welfare.

"(5) That the conduct of the defendant in securing the dismissal of the action which was instituted in Guilford County, North Carolina, in 1958, and surreptitiously removing the children from North Carolina in October, 1958, was the result of a fraudulent scheme to deprive the courts of North Carolina of jurisdiction of said children; that as a result, the Superior Court of North Carolina did not lose its jurisdiction over the children because their father surreptitiously took them to Nevada and kept them there from the fall of 1958 until the summer of 1959. That under all the circumstances of this case the Nevada decree is not entitled to full faith and credit in North Carolina.

"(6) That Mrs. Betty Ann Lennon, the plaintiff in this action, is not bound by the decree of the Nevada court depriving her of the custody of her children.

"(7) That the conditions and circumstances, with reference to the

care, custody and welfare of the children have changed radically since the entry of the Nevada decree on January 6, 1959, and, in any event, this court now has jurisdiction to determine the best interests of the children and award their custody accordingly."

The court thereupon entered an order awarding the custody of the children to the plaintiff, Betty Ann Lennon, upon condition that she continue to reside in the home of her parents, Mr. and Mrs. P. O. Barber, and upon the further condition that she totally abstain from the use of alcoholic beverages. The defendant was awarded visitation rights at the home of Mr. and Mrs. P. O. Barber, as set out in the order, and the further right to have the children visit him in his father's home in San Francisco upon the execution of a bond or by depositing securities in the office of the Clerk of the Superior Court of Guilford County, as required by the judgment, to guarantee that said children will be returned to North Carolina at the end of each visit authorized by the judgment.

The defendant appeals, assigning error.

*Harry E. Stanley; Jordan, Wright, Henson & Nichols, for plaintiff.*
*Thomas Turner; Joyner & Howison, for defendant.*

DENNY, J. It would seem that under the facts and circumstances revealed on this record, the appellant should not prevail unless this Court must give full faith and credit to the custody decree entered by the Nevada court at the time the divorce decree was entered dissolving the marriage between the plaintiff and the defendant on 6 January 1959. The validity of the divorce decree is not challenged in this proceeding. *Estin v. Estin,* 334 U.S. 541, 92 L. Ed. 1561, 1 A.L.R. 2d 1412; *Williams v. North Carolina,* 317 U.S. 287, 87 L. Ed. 279, 143 A.L.R. 1273.

In *May v. Anderson,* 345 U.S. 528, 97 L. Ed. 1221, the facts were these: Mrs. Anderson (now Mrs. May) was a native of Wisconsin. She married Anderson in that State and lived with him continuously until 1946. They had three children. In December 1946, as a result of growing marital unhappiness, Mrs. Anderson considered getting a divorce, and with the consent and approval of her husband, she took the children to Lisbon, Ohio, "to think over her future course." On New Year's Day 1947 she informed her husband by telephone that she was not coming back to him.

Within a few days thereafter her husband filed suit in Wisconsin, seeking an absolute divorce and custody of the children The only service of process upon the wife in Ohio consisted of the delivery to

her personally, in Ohio, of a copy of the Wisconsin summons and petition. Mrs. Anderson entered no appearance and took no part in the Wisconsin proceeding. Thereafter, a decree divorcing the parties from the bonds of matrimony and a decree purporting to award the custody of the children to their father were entered.

Armed with a copy of the decree and accompanied by a local police officer in Lisbon, Ohio, the husband demanded and obtained the children from Mrs. Anderson. The children remained with their father in Wisconsin from 1947 until 1 July 1951. The father then took the children to visit their mother in Lisbon. When he demanded their return she refused to surrender them.

Relying upon the Wisconsin decree, he promptly filed a petition in the proper forum in Ohio for a writ of *habeas corpus.* The Ohio court held that it was compelled to give full faith and credit to the Wisconsin decree, and, therefore, the decree was binding on Mrs. May and ordered the children discharged from further restraint by her. On appeal to the Court of Appeals and to the Supreme Court of Ohio, the order of the trial court was affirmed. On appeal, the Supreme Court of the United States said: * * * (W)e have before us the elemental question whether a court of a state, where a mother is neither domiciled, resident nor present, may cut off her immediate right to the care, custody, management and companionship of her minor children without having jurisdiction over her *in personam.* Rights far more precious to appellant than property rights will be cut off if she is to be bound by the Wisconsin award of custody.

" 'It is now too well settled to be open to further dispute that the "full faith and credit" clause and the act of Congress passed pursuant to it do not entitle a judgment *in personam* to extra-territorial effect if it be made to appear that it was rendered without jurisdiction over the person sought to be bound.' *Baker v. Baker, E & Co.,* 242 U.S. 394, 401, and see 403, 61 L.ed. 386, 391, 37 S.Ct. 152; *Thompson v. Whitman* (U.S.) 18 Wall 457, 21 L.ed. 897; *D'Arcy v. Ketchum* (U.S.) 11 How. 165, 13 L.ed. 648.

"In *Estin v. Estin,* * * * *(supra)* this Court upheld the validity of a Nevada divorce obtained *ex parte* by a husband, resident in Nevada, insofar as it dissolved the bonds of matrimony. At the same time, we held Nevada powerless to cut off, in that proceeding, a spouse's right to financial support under the prior decree of another state. In the instant case, we recognize that a mother's right to custody of her children is a personal right entitled to at least as much protection as her right to alimony.

"In the instant case, the Ohio courts gave weight to appellee's contention that the Wisconsin award of custody binds appellant

because, at the time it was issued, her children had a technical domicile in Wisconsin, although they were neither resident nor present there. We find it unnecessary to determine the children's legal domicile because, even if it be with their father, that does not give Wisconsin, certainly as against Ohio, the personal jurisdiction that it must have in order to deprive their mother of her personal right to their immediate possession.

"The judgment of the Supreme Court of Ohio, accordingly, is reversed and the cause is remanded to it for further proceedings not inconsistent with this opinion."

In view of the fact that the plaintiff herein was not personally served with summons in the State of Nevada and did not appear in said court in person or by attorney, based on the decision of the Supreme Court of the United States in *May v. Anderson, supra,* we hold that the courts of North Carolina are not bound by the custody decree entered in the Nevada court and that the court below had jurisdiction to determine the custody of the children involved in this controversy.

The facts set out hereinabove are more in detail than necessary to determine the full faith and credit question raised. However, they, together with other facts found and not challenged by defendant, disclose the factual situation essential to a disposition of the case on its merits.

The appellant contends there is no evidence upon which the charge of adultery can be sustained, as set out in finding of fact No. 5. In light of the facts and circumstances revealed on this record, we think it is immaterial whether or not the defendant maintained an illicit and adulterous love affair with Mrs. Gardner while living with his wife. It must be admitted, however, that the letters written by Mrs. Gardner to the defendant, some of which came into the possession of the plaintiff while she was living with the defendant, were indicative of such an amorous, intimate and passionate relationship between Mrs. Gardner and the defendant, which the offended wife, the plaintiff, was not required by law to condone or tolerate.

In our opinion, since North Carolina is the home of the plaintiff and the matrimonial domicile of the parties, and, furthermore, since the defendant surreptitiously removed the children from North Carolina in 1958 to deprive the courts of North Carolina of jurisdiction of said children, the courts of North Carolina did not lose jurisdiction over the children. *In re Means,* 176 N.C. 307, 97 S.E. 39.

It appears from the record that the court below, with the consent of the parties, interviewed the children privately and each child expressed the desire to remain in North Carolina with the plaintiff.

Moreover, the court found that the home of the defendant, presided over by the second wife, the former Mrs. Gardner, would not provide as suitable or happy environment for the children as the home of their mother and her parents. Hence, the court found as a fact that the best interests of the children would be served and promoted by placing them in the custody of the plaintiff in the home of Mr. and Mrs. P. O. Barber.

The court further found that since July 1959 the plaintiff and children have lived in the home of plaintiff's parents, Mr. and Mrs. P. O. Barber, who own a large and comfortable nine-room house on Starmount Drive in one of the best residential areas of Greensboro, North Carolina; that the children have separate bedrooms and there is a separate bath for their use; that Mr. and Mrs. Barber are persons of excellent character and reputation and neither of them uses intoxicants in any form whatsoever; that the plaintiff is likewise a woman of good character and reputation; that Mr. and Mrs. Barber are people of means; that Mrs. Barber has an independent income and Mr. Barber has a good income from his business as a general contractor; that since returning to North Carolina, the children have been regularly taken to church and Sunday School; that since the opening of school on September 2, 1959, they have regularly enrolled in the Sternberger School, a primary school, operated by the Greensboro City Board of Education in the Starmount Forest Subdivision; that the Barber home provides a happy Christian environment and possesses an excellent moral tone; that the children are happy and well adjusted at present in the care and custody of their mother in the home of her parents and do not wish to leave.

This decision does not conflict with our decisions in *Allman v. Register*, 233 N.C. 531, 64 S.E. 2d 861 or *Richter v. Harmon*, 243 N.C. 373, 90 S.E. 2d 744, except in the latter case it is stated: "If the petitioner were still a citizen and resident of the State of Florida, the decree in that State awarding the custody of the minor child * * * to her * * * would be binding on our courts under the full faith and credit clause of the Constitution of the United States." The foregoing statement seems to be in conflict with the decision of the Supreme Court of the United States in *May v. Anderson*, *supra*. Even so, such statement was not necessary to decision in the *Richter* case.

The judgment of the court below will be upheld.

Affirmed.