LESTER A. DEES v. BETTE ANNE VEAZEY McKENNA (DEES).

(Filed 4 March 1964.)

**1. Constitutional Law § 26; Divorce and Alimony § 22—**

Since the court of the state rendering a decree for the support and custody of minor children of the marriage has jurisdiction to modify or change such decree in its discretion in furtherance of the welfare and best interest of the infants, without a showing of change of condition, the Full Faith and Credit Clause of the Federal Constitution does not preclude the courts of another state from modifying or changing such decree in like manner. Art 4, § 1, Constitution of the United States.

DEES *v.* McKENNA.

**2. Same—Courts of this State have jurisdiction to modify decree of another state awarding custody of children when children are in this State.**

Unknown to plaintiff, defendant took the two children of the parties, one of whom was born prior to the marriage ceremony between them, to another state, and there obtained a decree awarding the custody of the children to her, in which action plaintiff was personally served with summons under its laws. During the pendency of that action and prior to the rendition of that decree plaintiff surreptitiously took the two children and returned with them to his home in this State, and instituted suit in which the marriage was annuled upon defendant's admission that at the time of the ceremony she had a living husband from whom she had not been divorced, but the court refused to award custody of the children on the ground that the foreign decree deprived it of jurisdiction. *Held:* The foreign decree was entered without that court being apprised of all the facts, and since that court had power to modify its decree, our courts have such jurisdiction, and the cause is remanded for further proceedings.

**3. Same—**

The fact that the child of the parties is born prior to their marriage ceremony does not affect the jurisdiction of the court, in decreeing annulment of the marriage, to award the custody of the child.

RODMAN, J., dissenting.

APPEAL by plaintiff from *Morris, J.,* November Session 1963 of CHOWAN.

This action was brought by the plaintiff (1) to annul the marriage ceremony entered into between him and the defendant on the ground that said marriage was bigamous as to the defendant for that at the time said ceremony was performed the defendant had a then living husband from whom she had not been divorced, and (2) for custody of the two children of whom he is the father and the defendant is the mother.

Prior to the time of the commencement of this action and at all times thereafter the said children resided and now reside with the plaintiff in Chowan County, North Carolina.

The plaintiff and the defendant first became acquainted in Alaska in September 1955. Both were married at that time, Bette Anne Veazey McKenna to one Daniel J. McKenna, and Lester A. Dees, the plaintiff, to one Trixie Webb Dees. Bette Anne Veazey McKenna employed an attorney in Alaska in 1955 to file a divorce action for her. Her divorce action was not prosecuted to a successful conclusion and was dismissed on 6 February 1958.

The defendant represented herself as a divorced person. Plaintiff and defendant lived together before the plaintiff was divorced. The older of the two children, Lorri Dianne, a girl, was born of their cohabitation 1. August 1957.

The plaintiff obtained a divorce from his wife, Trixie Webb Dees, in Chowan County, North Carolina, 26 November 1957. He and the defendant entered into a marriage ceremony on 29 November 1957 in Mississippi; their second child, a boy, Scott Alan, was born 13 November 1960 in Edenton, North Carolina.

Defendant in her answer in this action admitted that at the time of the marriage ceremony under attack she had a then living husband from whom she had not been divorced.

Based on the issues submitted and answered by the jury, the marriage ceremony entered into by the plaintiff and the defendant on 29 November 1957 was declared to be bigamous, and judgment was entered annulling said marriage ceremony and declaring the same void *ab initio*.

After the entry of said judgment, from which there is no appeal, the court announced it would proceed to hear the matter of the custody of the aforesaid two children and that before proceeding on the merits thereof the court would hear and pass upon the plea of *res judicata*.

When the plaintiff, a doctor of veterinary medicine, was released from military service he and the defendant returned to his former home, Edenton, North Carolina, to live, on 1 July 1960, and continued to live there as man and wife until 9 April 1963. On 9 April 1963, unknown to the plaintiff, the defendant took plaintiff's car and the two children, drove to Selma, North Carolina, abandoned the car and took the children to California where defendant's mother lives. Defendant has continuously since then lived in California.

On 1 May 1963, defendant instituted an action in California against plaintiff herein for separate maintenance and for custody and support for the two children. On 4 May 1963, the Sheriff of Chowan County, North Carolina, served on plaintiff a summons, complaint, and order to show cause in the action instituted in the Superior Court of Orange County, California. Whereupon, the plaintiff herein went to California and employed a private detective to help him locate his wife and children. On 7 May 1963, the plaintiff herein went to the residence of the mother of the defendant herein, to wit, Pearl Marie Graham, at which time the said Pearl Marie Graham handed the plaintiff herein an envelope with the name of plaintiff written thereon and with the name of the law firm of Schwab & Lambert written thereon, and stated to plaintiff herein that they were papers which she had been directed to hand to or serve upon the plaintiff herein. The plaintiff herein received the envelope in his hand, observed the writing thereon, and handed it back to said Pearl Marie Graham and stated at the time that he was advised of the contents, having been served with the same by the Sheriff of Chowan County.

Thereafter, the plaintiff herein left California and returned to North Carolina. He returned to California about 9 June 1963, and on 12 June

1963 surreptitiously took the two children involved herein and returned with them to Edenton, North Carolina, where they have lived since that time with their father, the plaintiff herein.

On 21 June 1963, a hearing was held in the action instituted in California for separate maintenance and custody of the children born to plaintiff and defendant. The court found that the defendant, plaintiff herein, had been duly served with summons and that the legal time for answering had expired; that no answer had been filed and no appearance had been made within the time provided by law or otherwise. Whereupon, the Superior Court of Orange County, California, entered a decree for separate maintenance and awarded the mother, the defendant herein, the plaintiff therein, custody of the children.

The defendant in this action set up the California decree as a bar to plaintiff's right to custody of the children involved. The court below held the California decree is valid and binding on the North Carolina courts; that no evidence tending to show there had been a change in conditions had been offered by either party, and denied the relief sought by plaintiff as to custody. From this order, the plaintiff appeals, assigning error.

*William S. Privott and John H. Hall for plaintiff.*
*Pritchett & Cooke for defendant.*

DENNY, C.J.   The question for determination on this appeal is whether or not the court below committed error in ruling that the order entered in the Superior Court of Orange County, California, on 21 June 1963, awarding the custody of the children involved, is *res judicata,* and that the Superior Court of Chowan County, North Carolina, was without jurisdiction to consider or determine custody of the children involved.

We do not think the jurisdiction of the Superior Court of Chowan County depends on whether or not the California court obtained personal service on the plaintiff herein. However, our investigation of the statutory provisions of Section 410 of the California Code of Civil Procedure, together with the affidavits filed in the California proceeding, leads us to the conclusion that the California court did obtain personal service on the plaintiff herein, defendant in the California action.

Likewise, it would seem that the California court did not lose jurisdiction over these children if they were subject to its jurisdiction at the time of the institution of the action but were removed from the jurisdiction before the California decree was entered. *Lennon v. Lennon,* 252 N.C. 659, 114 S.E. 2d 571; *In re Orr,* 254 N.C. 723, 119 S.E. 2d 880; *Maloney v. Maloney,* 67 Cal. App. 2d 278, 154 P. 2d 426.

In *In re Orr, supra,* the wife was domiciled in North Carolina, the children were residing with her, and the father was domiciled in the

State of Florida. The father was personally served in a *habeas corpus* proceeding brought to determine custody of the children, and the father was ordered not to remove the children from this State. In violation of the order he removed the children from North Carolina. From an order awarding the custody of the children to the petitioner, respondent's wife, he appealed. *Rodman, J.*, speaking for the Court, said: "Respondent contends his flagrant violation of the lawful order of the court not to remove the children from its jurisdiction deprived the court of the right to hear and determine what would best promote the welfare of those children. The contention is wanting in merit. The right to hear and decide came into being the instant the writ was served on respondent. He could not thereafter deprive the court of the jurisdiction so acquired."

In the instant case, the order which the California court held was personally served on the defendant (plaintiff herein) in California, contained an express order restraining the plaintiff (defendant there) from removing the children involved from the State of California.

Even so, the jurisdiction of the Superior Court of Chowan County to entertain an action for custody of the children involved depends upon whether or not we are bound to give full faith and credit to the California decree, even if it be conceded that court had jurisdiction and the right to enter the decree which it did enter on 21 June 1963.

In *New York ex rel Halvey v. Halvey*, 330 U.S. 610, 91 L. Ed. 1133, 67 S. Ct. 903, the parties were married in 1937 and lived together in New York until 1944. In 1938 a son was born. Marital troubles developed. In 1944 Mrs. Halvey, without her husband's consent, left home with the child, went to Florida and established her residence there. In 1945 she instituted a suit for divorce in Florida. Service of process on Mr. Halvey was obtained by publication, he making no appearance in the action. The day before the Florida decree was granted, Mr. Halvey, without the knowledge or approval of his wife, took the child back to New York. The next day a decree was entered by the Florida court, granting Mrs. Halvey a divorce and awarding her permanent custody and control of the child.

Thereupon, Mrs. Halvey brought a *habeas corpus* proceeding in the New York Supreme Court, challenging the legality of Mr. Halvey's detention of the child. After hearing, the New York Court ordered "(1) that the custody of the child remain with the mother; (2) that the father have rights of visitation including the right to keep the child with him during stated vacation periods in each year, and (3) that the mother file with the court a surety bond in the sum of $5,000, conditioned on the delivery of the child in Florida for removal by the father to New York for the periods when he had the right to keep the child with him."

The ruling was upheld by the Appellate Division and the Court of Appeals. The case was heard in the Supreme Court of the United States on a petition for writ of *certiorari*, which was granted because it presented an important problem under the Full Faith and Credit Clause of the Constitution, Article 4, Section 1.

The United States Supreme Court held that, under the Florida law the decree could be modified " 'on altered conditions shown to have arisen since the decree, or because of material facts bearing on the question of custody and existing at the time of the decree, but which were unknown to the Court * * *.'

"The result is that custody decrees of Florida courts are ordinarily not *res judicata* either in Florida or elsewhere, except as to the facts before the court at the time of judgment. * * *

"Respondent did not appear in the Florida proceeding. What evidence was adduced in that proceeding bearing on the welfare of the child does not appear. But we know that the Florida court did not see respondent nor hear evidence presented on his behalf concerning his fitness or his claim 'to enjoy the society and association' of his son. * * * It seems to us plain, therefore, that under the rule of *Meadows v. Meadows*, 78 Fla. 576, 83 So. 392, * * * the Florida court would have been empowered to modify the decree in the interests of the child and to grant respondent the right of visitation, if he had applied to it rather than to the New York court and had presented his version of the controversy for the first time in his application for modification.

"So far as the Full Faith and Credit Clause is concerned, what Florida could do in modifying the decree, New York may do. * * * But a judgment has no constitutional claim to a more conclusive or final effect in the State of the forum than it has in the State where rendered. * * * Whatever may be the authority of a State to undermine a judgment of a sister State on grounds not cognizable in the State where the judgment was rendered (*Cf. Williams v. North Carolina*, 325 U.S. 226, 230, 89 L. Ed. 1577, 1581, 65 S. Ct. 1902, 157 A.L.R. 1366), it is clear that the State of the forum has at least as much leeway to disregard the judgment, to qualify it, or to depart from it as does the State where it was rendered."

In the foregoing case the Court expressly reserved decision on the question whether the Florida court had jurisdiction over the Halvey child after his removal from that State before the custody decree was entered. It appears that the Supreme Court of the United States has not expressly decided that question, notwithstanding the numerous State decrees holding that where the State court once obtains jurisdiction it retains it, even though the child be removed from the State before the

entry of the custody decree. *Lennon v. Lennon, supra; In re Orr, supra;* *Maloney v. Maloney, supra*. In the *Halvey* case, Frankfurter, J., in a concurring opinion, said: "Since the jurisdiction of the Florida court in making the custodial decree is doubtful, New York was justified in exercising its power in the interest of the child."

In *Stack v. Stack*, 189 Cal. App. 2d 357, 11 Cal. Rptr. 177, upon a motion made on behalf of the father to modify a former decree awarding custody of the child to the mother, the Court said: "The only 'rule' consistently applied is that the court may modify or vacate its order 'at any time.' Civil Code, Section 138; cf. *Exley v. Exley, supra,* 101 Cal. App. 2d 835, 226 P. 2d 662.

"The mother's principal reliance is upon the change of circumstances 'rule.' As we have seen it, it is no longer a rule, if it ever was one."

In the case of *Frizzell v. Frizzell*, 158 Cal. App. 2d 652, 323 P. 2d 188, the Court said: "Questions of custody, support and education of children are addressed to the sound discretion of the trial court. * * *

"The rule that there must be a showing of 'changed circumstances' has no application where the trial court has modified a decree. That rule only applies where the trial court has refused to modify a decree and it is contended an abuse of discretion occurred. To show such abuse there must be a showing of changed circumstances. *Kelly v. Kelly*, 75 Cal. App. 2d 408, 171 P. 2d 95; *Dotsch v. Grimes*, 75 Cal. App. 2d 418, 171 P. 2d 506."

In the case of *Urquhart v. Urquhart*, 196 Cal. App. 2d 297, 16 Cal. Rptr. 469, the Court said: "The change of circumstances rule is no longer a rule even if it ever was one. The only rule consistently applied is that the court may modify or vacate its order at any time. Civil Code, Section 138; *Stack v. Stack*, 189 Cal. App. 2d 357, 11 Cal. Rptr. 177." See also *Stewart v. Stewart* (Cal.), 260 P. 2d 44.

In *Peterson v. Peterson*, 64 Cal. App. 2d 631, 149 P. 2d 206, the Court said: "In custody cases the underlying principle, paramount to all others, is the welfare and best interest of the child. * * * Therefore, an application for a modification of an award of custody must be addressed to the sound legal discretion of the trial court, * * * subject only to the qualifications contained in section 138 of the Civil Code."

Section 138 of the Civil Code of California, in pertinent part, reads as follows: "In actions for divorce or for separate maintenance the court may, during the pendency of the action, or at the final hearing or at any time thereafter during the minority of any of the children of the marriage, make such order for the custody of such minor children as may seem necessary or proper and may at any time modify or vacate the same. In awarding the custody the court is to be guided by the fol-

lowing considerations: (1) By what appears to be for the best interests of the child * * *."

In the case of *Starr v. Starr*, 121 Cal. App. 2d 633, 263 P. 2d 675, the plaintiff had secured a decree of divorce from the defendant in 1949 in the State of Nevada. Under the terms of that decree she was awarded the custody of the minor child of the parties, who was five years of age, and the defendant was ordered to contribute the sum of $25.00 per month for the support of the child. Thereafter, the plaintiff and the child became domiciled in Sonoma County, California. On 23 February 1951 the plaintiff filed an action in the Superior Court of said county in which she sought additional sums for the support of said child. The Court said: "The Nevada statutes in this regard (Section 9462 N.C.L. as amended in 1947) are substantially the same as Civil Code, Section 138 of this state, which gives a continuing jurisdiction to modify or vacate a prior award of support. * * *

"* * * In summary, our Supreme Court, in the *Sampsell* case (32 Cal. 2d 763, 197 P. 2d 739), held that 'if the decrees of California courts with respect to child custody are subject to modification or annulment in this state, they are likewise subject to modification or annulment in any state having jurisdiction over the subject matter, for such a decree "has no constitutional claim to a more conclusive or final effect in the State of the forum than it has in the State where rendered".' *New York ex rel Halvey v. Halvey*, 330 U.S. 610, 67 S. Ct. 903, 91 L. Ed. 1133."

It seems the court below relied on *Allman v. Register*, 233 N.C. 531, 64 S.E. 2d 861, in denying the relief sought by the plaintiff. We think there is a substantial difference in the facts in the *Allman* case and the instant case. In the *Allman* case the defendant husband had abandoned his wife and children in the State of Virginia. An action was instituted for divorce, custody and separate maintenance by the wife. Personal service was obtained on the defendant husband in Virginia and the custody of the children duly awarded to the mother after a full hearing by the Virginia court. The children were definitely residents of and domiciled in the State of Virginia. The father of the children, pursuant to an agreement with the mother, had the children visit him in North Carolina in the summer of 1948, 1949 and 1950, returning the children to their mother's home in Virginia each year in time for them to enter school in the Fall in accord with the terms of the agreement, until the summer of 1950 when he refused to surrender them. Since the children were domiciled in Virginia, we held we were bound by the Virginia decree.

In the instant case, these children are no longer residents of California but are residents of and living in North Carolina. Furthermore,

the older one of these children resided in North Carolina from 1 July 1960 until removed therefrom by the mother without the consent of the father on 9 April 1963. The younger child lived in North Carolina with its parents from birth, 13 November 1960, until 9 April 1963, when the mother abandoned the father of these children and surreptitiously removed the children to California. In that State she obtained a decree for custody of the children and for separate maintenance upon a complaint in which she falsely alleged that she and Lester A. Dees were married on 29 November 1957 and ever since have been and now are husband and wife; that the plaintiff and the defendant have two children, the issue of said marriage, when, as a matter of fact, the older of the two children was born before the bigamous marriage was entered into in Mississippi.

In light of the existing facts, and the further fact that the statute and decisions with respect to custody in California authorize the modification or vacation of a custody decree without any showing of a change in circumstances, we hold that whatever California could do in this respect, North Carolina may do. *New York ex rel Halvey v. Halvey*, *supra*.

The fact that the children involved herein were not born of a legal marriage does not prevent the courts from extending their protective care and entering such decrees as may be deemed necessary for the best interest and welfare of said children. Since these children are now living in North Carolina, and all parties are subject to the jurisdiction of the Superior Court of Chowan County, the defendant mother having employed counsel to represent her, having filed answer and is opposing the modification of the California custody decree, we hold the Superior Court of Chowan County has jurisdiction to hear and determine what is for the best interest and welfare of these children, and to enter such decree with respect to their custody and support as the court may deem appropriate.

The order entered below with respect to lack of jurisdiction of the Superior Court of Chowan County is set aside and this cause is remanded for further hearing not inconsistent with this opinion.

Error and remanded.

RODMAN, J. Dissenting: I dissent because I think the majority has placed too strict and technical an interpretation upon the language used by Judge Morris.

These facts are important in determining the scope and effect of his decree. (1) Defendant did not intend to deceive the courts of California. When she applied to the courts of that state for a divorce, she

thought she had, prior to her marriage to plaintiff, been lawfully divorced from her first husband. She did not learn until July 1963 that her first marriage had not in fact been terminated. Defendant's mother resides in California. Defendant intended to make that her home. It had become apparent that her marriage to plaintiff was a failure. (2) The order of May 1, 1963, directing the father to show cause why custody should not be awarded to the mother expressly "enjoined and restrained" the father from "taking or removing the children, Lorri Dianne Dees and Scott Alan Dees from the State of California and the custody of the plaintiff." (Defendant here). (3) Plaintiff was aware of the provisions of the show cause order when he took the children from California. The court quotes the father as saying, "it was 'necessary for him to steal the children in order to get them'."

The judgment recites:

"[I]n view of the manner in which said children were returned to North Carolina, this Court notwithstanding, under ordinary circumstances it would not be ousted of jurisdiction, is in this particular case because of the peculiar circumstances involved, precluded from further investigating the matter as to custody and is called upon to give full faith and credit to the decree entered in the Superior Court of Orange County, California."

The Court then adjudged:

"[T]hat insofar as the custody of the minor children of the plaintiff and defendant is concerned, the court orders that the decree heretofore entered in the Superior Court of Orange County, California, is *res judicata* and leaves this Court without jurisdiction to further determine the custody of said minor children."

The words may not be technically correct; however, the order ought not to be held erroneous because Judge Morris said "without jurisdiction" when it is apparent he meant "the court refuses to exercise jurisdiction."

The Court's refusal to take jurisdiction was, obviously, based on plaintiff's contumacious defiance of a valid order of a court of a sister state. When one has, as plaintiff expresses it, "to steal" in order to invest a court with jurisdiction I do not think it becoming or proper for that court to aid him in his nefarious work. It should require him to assert his rights before the California court which had previously taken jurisdiction.

The rule here advocated is not new. We at least implied recognition of the rule in *In Re Orr*, 254 N.C. 723, 119 S.E. 2d 880. There, as here, the father wilfully disobeyed an order of the court of general jurisdiction

which enjoined him from removing the children from its jurisdiction. There, as here, the mother found it necessary to make a new home in another state. Having wrongfully taken the children to Florida, the father not only challenged the rights of the courts of this State to award custody but inquired how the courts of this State expected to enforce any decree here entered. We answered in this language:

"If it be that respondent is beyond the jurisdiction and hence the power of this Court to enforce orders lawfully made, courts do exist where respondent resides with adequate power to compel respect and obedience to lawful orders of a court having jurisdiction of the parties and subject matter."

The Civil Court of Appeals of Texas said in *Autry v. Autry,* 359 S.W. 2d 278:

"Barring exceptional circumstances creating an immediate emergency, we believe it is the duty of a court, on finding a child within its borders who is either domiciled in another state or has been wrongfully removed from such other state to escape jurisdiction in a pending proceeding, not to decide the question of proper custody on the merits, but to immediately grant or remand such child to the last lawful custodian without prejudice to the right of the other claimant or claimants to apply to the foreign court for a change of custody as the best interest of the child might appear to demand."

*State v. Black,* 196 So. 713 (Ala.); *Leathers v. Leathers,* 328 P. 2d 853 (Cal.); *Crocker v. Crocker,* 219 P. 2d 311 (Colo.); *Crabtree v. Superior Ct. In and For Stanislaus County,* 17 Cal. Rptr. 763; *Drake v. Drake,* 1 S.E. 2d 573 (Ga.).

The troublesome problem illustrated by this case is considered in *Interstate Recognition of Custody Decrees,* 51 Mich. L. Rev. 345; and *Custody and Maintenance Law across State Lines,* 10 Law & Contem. Prob. 819. Dean Stansbury there said: "If there is a place anywhere in the laws for that much criticized word 'comity' it is surely here."

I give my approval to the observation made by the Supreme Court of New Mexico in *Evens v. Keller,* 6 P. 2d 200:

"Any other rule would be disastrous in the extreme, would reward contempt, and place a premium on abduction. The courts of any one of the forty-eight different states would, in the mind of a designing claimant to a child's custody, offer hope that there could an adverse decision elsewhere be circumvented and a tortious custody of a minor made lawful. Fortunately the jurisprudence of our country has not so moulded the laws."